Charles BALDWIN, Plaintiff-Appellant,

v.

BIRMINGHAM BOARD OF EDUCA-
TION, Defendant-Appellee.

No. 79–2603.

United States Court of Appeals,
Fifth Circuit.
Unit B

March 19, 1981.
As Amended June 11, 1981.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff-appellant.

Lange, Simpson, Robinson & Somerville, Harry L. Hopkins, Birmingham, Ala., for defendant-appellee.

Before SIMPSON, RONEY and THOMAS A. CLARK, Circuit Judges.

RONEY, Circuit Judge:

Plaintiff, a black male, was employed by the defendant Birmingham Board of Education as a teacher. At the end of his third year of teaching his contract was not renewed and he was thus denied tenure. He brought this action under 42 U.S.C.A. § 1981 claiming he was discriminated against on the basis of his race. Following a nonjury trial, the district court found there was no showing of purposeful discrimination and entered judgment for defendant. Concluding that the failure to make certain findings led the district court to improperly evaluate plaintiff's prima facie evidence of disparate treatment, we vacate the judgment and remand for further proceedings.

Plaintiff was hired as a teacher by defendant in December 1973 and was assigned to teach seventh grade math at Powderly Elementary School. While he had received some training in teaching mathematics, he was not certified to teach mathematics and did not have an endorsement in that subject, his endorsements being in commercial subjects and English. Plaintiff encountered difficulty maintaining discipline at Powderly and wrote letters to the defendant's personnel department to that effect. In other respects his teaching ability was rated good.

In the spring of 1974, plaintiff requested a transfer to another school and into a field in which he was certified. Plaintiff was rehired for the 1974–75 term and transferred to Lincoln Elementary School to teach eighth grade math. He testified that he was told that he was not assigned to teach in his area of certification because of decreased enrollment. Apparently plaintiff enjoyed his new assignment and did well. His evaluations show high ratings and in the spring of 1975 he requested the "same assignment" for the next school year. During 1975 plaintiff also became certified in guidance counseling and supervision.

Beginning with the 1974–75 school year, the defendant school board commenced a two-year program to obtain accreditation for its elementary schools. One of the major obstacles to accreditation was the large number of elementary teachers teaching "out of field," that is, teaching subjects or grades for which they were not qualified under standards published by the Southern Association of Colleges and Schools and by the State of Alabama. The district court found that it was sometimes difficult to

identify such teachers but that as soon as the administration learned of such a teacher, he or she was advised of the problem and alternative solutions. One solution was to transfer into an in-field assignment if a vacancy in that field existed. The district court found that tenured teachers were given preference in utilizing this solution. The other solution was for the out-of-field teacher to return to school and complete sufficient courses to become certified in the field in which he was teaching. The defendant board considered "in field" those teachers who entered into an agreement to complete the course of study pursuant to a specified timetable and who were actively pursuing that objective.

In September of 1974, teachers identified as out of field were sent letters listing the alternative methods of becoming in field. Plaintiff testified that he never received such a letter, and none appears in his personnel file. Plaintiff also testified, however, that as chairman of the mathematics department at Lincoln School during the 1974–75 term, he was actively involved in a self-study program which assessed where the school stood with respect to meeting the accreditation standards and that he was personally aware of other teachers identified as out-of-field.

Plaintiff was rehired for the 1975–76 school year and pursuant to his request to retain the same assignment, he continued at Lincoln School teaching eighth grade math. Sometime during the fall of 1975 the school was cited because plaintiff and two other teachers were teaching out of field. On November 18, the day after learning of the citation, Dr. Roy Nichols, the supervisor for about 30 elementary schools, visited Lincoln School. After discussing the problem with the principal, Dr. Nichols personally discussed the matter with plaintiff outside plaintiff's classroom. Dr. Nichols testified that he told plaintiff he would have to get in field by being transferred or by going back to school and becoming certified in math, that plaintiff said he wanted to stay at Lincoln and teach math, and that plaintiff said he would go back to school. The principal was told to make sure plaintiff followed through on this assignment because the school's accreditation was at stake. Plaintiff testified that the principal told him to get an outline of his proposed course of study and a letter for Dr. Nichols' purposes, but it is admitted that the outline and the letter were never secured before plaintiff's termination. The district court found that by December 1975 either Dr. Nichols or the principal made it abundantly clear to plaintiff that he needed to achieve in field status by the end of the current school year in order to continue teaching. Although plaintiff contends this finding was clearly erroneous, the record sufficiently supports the court's finding.

Following the conversation with Dr. Nichols, plaintiff sought and obtained permission of the state board of education to take more than three semester hours while teaching full time. On December 8, he was admitted as an Irregular Post Graduate student at the University of Alabama at Birmingham. In early January 1976 he enrolled in three math courses of three semester hours each. Within two weeks, however, he dropped all three courses without informing anyone at the school. He explained at trial that he dropped the courses because he was too busy, in that he was teaching school full time, was studying career awareness on a voluntary "mini-grant" from the school board, and had recently been married.

In March 1976 plaintiff prepared his work assignment request for 1976–77 and, as he had done the previous year, requested the same assignment.

Late in the school year plaintiff's principal learned that plaintiff was not enrolled in college courses leading to certification in mathematics, and he notified the personnel department of that fact. On that same day, Dr. Nichols recommended to the board that plaintiff not be given tenure because he was not certified to teach elementary mathematics and had failed to take proper steps to become certified despite repeated warnings that he should do so. Acting on this recommendation, the board on May 25,

1976 notified plaintiff his contract would not be renewed.

Under Alabama law, unless a teacher is notified before the end of the school term of his third year of teaching that his contract will not be renewed, the teacher automatically acquires tenure. Ala.Code tit. 16, §§ 24–2(a)—24–12 (1975). Tenured status gives the teacher certain procedural and substantive rights in his job, makes it more difficult for the school board to terminate the teacher and increases the school board's obligation to find a place for the teacher. *See generally* Ala.Code tit. 16, ch. 24 (1975).

Plaintiff filed suit under 42 U.S.C.A. § 1981 alleging that the defendant board of education discriminated against him on the basis of his race by refusing to transfer him to a position in field while transferring out-of-field whites into field and refusing to grant him tenure because he was out of field while granting tenure to out-of-field whites. A somewhat detailed account of the course of discovery and trial is necessary to understand the trial court's actions.

In preparing for trial, plaintiff filed interrogatories which defendant did not answer. After several months, plaintiff filed a Motion to Compel Answers to Interrogatories, which was granted by the district court. Defendant eventually answered all the interrogatories except number 18. Interrogatory 18 dealt specifically with the qualifications, teaching assignments and granting of tenure to out-of-field teachers. Plaintiff finally filed a Motion for Sanctions for defendant's refusal to answer interrogatory 18. The court had not ruled on this motion prior to trial, and on the day of trial announced that the trial would proceed without the interrogatory being answered and that the Motion for Sanctions would be ruled on at the close of evidence.

Prior to trial, plaintiff also subpoenaed a number of teacher personnel files to the deposition of one of defendant's officers. Upon defendant's refusal to produce, plaintiff filed a Motion to Compel Production of the subpoenaed items. The Court responded by ordering that the original files be produced to plaintiff's counsel "for his personal review," but forbidding photocopying of most of the material in the files. Based on counsel's review of the files, on the day before trial plaintiff subpoenaed 120 teacher permanent record cards, which plaintiff had been permitted to photocopy, and 167 personnel files. At trial the court refused to require the production of all 167 files, but eventually some 37 files were produced, 17 relevant to the issue of failure to transfer plaintiff when he was out of field, and the remainder relating to the issue of failure to grant tenure to plaintiff while granting it to similarly situated whites. In plaintiff's attempt to prove discrimination for failure to transfer, it became apparent that trying to wade through the personnel files on the basis of the notes made by plaintiff's counsel during his examination was very cumbersome. The court therefore instructed plaintiff to present what he considered the five best files out of the 17. The court examined these five, found they did not support plaintiff's contentions, and excluded the remainder as cumulative under Fed. R.Evid. 403.

Due to the cumbersomeness of the files, plaintiff turned to the teacher permanent record cards to prove discriminatory failure to grant tenure. These cards were used by the school board primarily to show teachers' salaries, but the cards also contained information about degrees, certifications and teaching assignments. In some instances the cards did not contain sufficient information to support plaintiff's claims. In a few instances, testimony by defendant's personnel specialist indicated the information on the cards was outdated or incorrect. Some of the cards, however, appeared to contain sufficient information to show that out-of-field whites were granted tenure. The trial judge indicated that because some of the cards contained erroneous information he had some doubts as to the cards' reliability.

After plaintiff rested, the defendant moved to admit in full a deposition which had been admitted in part, rested its case, and moved for a voluntary non-suit. The court took the motion under advisement.

Plaintiff raised again the question of sanctions for refusal to answer interrogatory 18. When the court indicated it was not inclined to grant the motion, plaintiff argued that defendant's failure to answer the interrogatory had prejudiced him by causing him to get "tied up in the cumbersome process of trying to go through the files here in the courtroom." The court agreed and ruled that plaintiff would have seven days to rediscover the personnel files and submit additional evidence from them.

Pursuant to this order, plaintiff later offered into evidence a number of documents from the personnel files of some 45 teachers. Because of the earlier ruling prohibiting photocopying, copies of those documents were not attached to the motion to admit. Plaintiff advised the court that the documents were in support of evidence presented at trial and that no further oral testimony should be offered. Defendant objected to the additional evidence as lacking probative value or requested in the alternative that it be allowed to present additional oral testimony to explain the documents.

In its Findings of Fact and Conclusions of Law, the district court considered the positions of the parties but announced the battle was over a moot issue because the additional documents were not before the court and it could not rule on their admissibility in their absence. Even if they were, the court said, they would be cumulative and likely would not be admitted under Rule 403. Therefore, it ruled, the additional documents would not be considered and no additional oral testimony would be taken.

Ruling on the merits, the court found that similarly situated whites were not treated more favorably than plaintiff with respect to transfers, there was no evidence that race was a factor in transfer decisions, and therefore plaintiff had not shown racial discrimination on that issue. Addressing the claim of disparate treatment in granting tenure, the court found the teacher permanent record cards unreliable. But even if the information on the cards were reliable, said the court, any disparity of treatment reflected by the cards was not

shown to be in any way related to plaintiff's race. In support of this conclusion, the court cited general statistical information about the defendant school board and its well-integrated work force. The court concluded that plaintiff had failed to prove his case and the judgment would be entered for defendant.

After judgment was entered against him, plaintiff moved for a new trial or to alter and amend the judgment. In the motion, plaintiff pointed out that the additional documents were not attached to the post-trial motion to admit because of the court's earlier order forbidding photocopying. An explanatory letter written by plaintiff to the court, a part of the record on appeal, makes it clear that plaintiff was seeking to admit the additional documents from the files to demonstrate that the teacher permanent record cards were reliable for the purpose for which they were presented. In response to plaintiff's motion the court ordered defendant to submit to the court the documents plaintiff sought to admit. After those documents were submitted, plaintiff's motion for a new trial or to alter and amend the judgment was denied.

On appeal, plaintiff argues the district court erred in failing to find he made a prima facie showing of racial discrimination which shifted to defendant the burden of explaining the disparity of the treatment plaintiff received. This error was caused in part, plaintiff contends, on the court's finding that the permanent record cards were unreliable, a finding which plaintiff says was clearly erroneous.

 The law is clear in this Circuit that the plaintiff in an action under 42 U.S.C.A. § 1981 must prove purposeful discrimination. *Grigsby v. North Mississippi Medical Center, Inc.*, 586 F.2d 457, 460–61 (5th Cir. 1978); *Williams v. DeKalb County*, 582 F.2d 2 (5th Cir. 1978). The plaintiff alleging disparate treatment in an action under Title VII of the 1964 Civil Rights Act has a similar burden of proving discriminatory intent. *United Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396

(1977). Because of this similarity, we have recently held in two section 1981 employment discrimination cases involving disparate treatment that evidence which would have presented a prima facie case in a Title VII disparate treatment case established plaintiff's prima facie case. *Ramirez v. Sloss*, 615 F.2d 163 (5th Cir. 1980); *Crawford v. Western Electric Co.*, 614 F.2d 1300 (5th Cir. 1980). Those cases are controlling here.

■ We held in *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (5th Cir. 1977), a Title VII disparate treatment case, that the discharge of the black plaintiff and the retention of another white employee under apparently similar circumstances stated a prima facie case. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 280–85, 96 S.Ct. 2574, 2578–81, 49 L.Ed.2d 493 (1976). Such a showing, which is essentially the four-part prima facie case set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as applied to wrongful discharge cases, raises the inference, in the absence of explanation, that the defendant's actions were based on discriminatory motivation. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *Ramirez v. Sloss*, 615 F.2d at 168–69. With these principles in mind, we examine the actions of the district court.

■ A careful review of the record demonstrates the district court was correct in concluding that plaintiff did not prove that similarly situated whites were more favorably treated with respect to transfers. There are numerous examples in the record of whites teaching subjects or grades for which they were not certified who were not transferred into field. Since plaintiff failed to make a prima facie showing that in failing to transfer him to an assignment in field the defendant school board treated him any differently than similarly situated whites, the district court is affirmed on that issue.

Plaintiff's claim of discrimination was also based on the allegation that he was denied tenure because he was out of field while out-of-field whites were granted tenure. As described above, a teacher was considered out of field if he was teaching in a grade or subject for which he did not have proper certification or endorsement or if he was not progressing toward becoming certified. From the cards, plaintiff produced a number of examples of white teachers who were granted tenure while teaching in a grade or subject for which they were not properly certified or endorsed. By itself, however, this was not sufficient to show disparate treatment. Plaintiff also had to show these teachers were not progressing toward certification. There were affirmative indications on the cards and in other evidence in the record that most of these teachers were progressing toward becoming certified and consequently would be considered in field. From five cards, however, Susan M. Kidd, Ann N. Jordan, William P. Oechsle, Pamela Reach and Larry B. Epperson, white teachers who received tenure while teaching subjects or grades in which they were not certified, there is not sufficient evidence in the record for this Court to determine whether they were progressing toward certification.

■ The district court failed to make findings as to whether these five teachers were progressing toward certification, apparently because it found that all the permanent record cards were unreliable. Plaintiff contends this broad finding was clearly erroneous. The record does contain testimony as to a number of the record cards showing they contained outdated or erroneous information. With respect to the cards for Kidd, Jordan, Oechsle, Reach and Epperson, however, there was no such testimony and in fact the documents submitted after trial substantiated all the information on the cards. Therefore, as to them at least, the court's finding of unreliability was incorrect. Because of this error, which may have been caused by the rather disorganized presentation of plaintiff's case, and the resulting failure to find whether the five teachers were progressing toward certification, the judgment must be vacated and the case remanded to the district court.

**956**

If plaintiff can show that these five white teachers were not in the process of becoming certified and thus were out of field, that will be sufficient to prove a prima face case of racial discrimination under *Turner v. Texas Instruments, Inc.*, 555 F.2d at 1251.

 Defendant will then have an opportunity to rebut the prima facie showing by producing evidence which would allow the trier of fact rationally to conclude that the employment decision was not motivated by discriminatory animus. *Texas Department of Community Affairs v. Burdine*, —— U.S. ——, ——, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981).

If the defendant effectively rebuts plaintiff's charge, plaintiff must be afforded a fair opportunity to show that defendant's asserted justification is merely a ruse for a racially discriminatory decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 804–05, 93 S.Ct. at 1825; *Whiting v. Jackson State University*, 616 F.2d at 121.

The ultimate issue, of course, is whether racial considerations were a significant factor in the decision not to renew plaintiff's contract and thus deny him tenure. *Whiting v. Jackson State University*, 616 F.2d at 121; *Garcia v. Gloor*, 618 F.2d 264, 268 (5th Cir. 1980). A prima facie showing is not equivalent to an ultimate finding of fact as to discriminatory disparate treatment, *Furnco Construction Corp. v. Waters*, 438 U.S. at 576, 98 S.Ct. at 2949; *Tanner v. McCall*, 625 F.2d 1183, 1194 (5th Cir. 1980), and the burden of showing purposeful discrimination by a preponderance of the evidence remains on plaintiff. *Whiting v. Jackson State University*, 616 F.2d at 121; *Jepsen v. Florida Board of Regents*, 610 F.2d 1379, 1382 (5th Cir. 1980).

*Denial of motion to amend.* After this case had been set for trial, plaintiff moved to amend his complaint to add a count under Title VII. The district court denied the motion to amend on the grounds that it was too late, it presented a different standard of proof, and it raised a factual issue over the identity of the plaintiff and other charges filed with the EEOC. After denial, plaintiff filed a separate lawsuit in federal district court. Following the trial in this case and during the pendency of this appeal, plaintiff dismissed his Title VII case. He contends the district court abused its discretion in denying his motion to amend. Because of the dismissal, the issue is now moot and we need not decide it. *See Astron Industrial Associates, Inc. v. Chrysler Motors Corp.*, 405 F.2d 958 (5th Cir. 1968); *Wilson Cypress Co. v. Atlantic Coast Line Railroad*, 109 F.2d 623 (5th Cir. 1940).

The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.