Anthony T. LEE et al., Plaintiffs,

United States of America, Plaintiff-Intervenor and Amicus Curiae,

National Education Association, Inc.; and Willie Anthony, Plaintiff-Intervenors,

v.

OZARK CITY BOARD OF EDUCATION et al., Defendants.

Civ. A. No. 1063–S.

United States District Court,
M. D. Alabama, S. D.

July 10, 1981.

Gray, Seay & Langford, Montgomery, Ala. and Winn S. L. Faulk, Dothan, Ala., for plaintiffs, NEA and Willie Anthony.

James Turner, Ed. Section, Civ. Rights Div., U. S. Dept. of Justice, Washington, D.C., and U. S. Atty. Kenneth Vines, Montgomery, Ala., Charles L. Woods, Ozark, Ala., for U.S.A.

## OPINION

HOBBS, District Judge.

Plaintiff-intervenors in this cause, National Education Association, Inc. and Willie Anthony, bring this suit against the Ozark City Board of Education, the Superintendent of the Ozark City School System, and the individual members of the Ozark City Board of Education for alleged racial discrimination against plaintiff-intervenor Anthony with respect to defendants' decision not to rehire plaintiff-intervenor as a teacher in the Ozark City public school system for the 1979–80 school year. A bench trial was held June 23, 1981, on plaintiff-intervenor's claim. The following findings of fact and conclusions of law are entered pursuant to that trial.

## FINDINGS OF FACT

Plaintiff-intervenor is a black male. He graduated from Alabama State University in 1976 with a Bachelor of Science degree in physical education. Defendants employed plaintiff-intervenor as a physical education instructor and assistant coach at Carroll High School in the Ozark City school system for the 1976–77, 1977–78, and 1978–79 school years. Defendant School Board voted not to re-employ him for the 1979–80 school year.

At the time Anthony was first employed for the 1976–77 school year, three other individuals were hired by defendant School Board for the same type of position. These three employees were white. Together, the three whites and Anthony comprised the assistant coaching staff at Carroll High School. The three white coaches continued to serve with Anthony through the 1978–79 school year.

At the end of the 1978–79 school year, defendant School Board voted to renew the teaching contracts of two of the

four members of the assistant coaching staff. Coach Robertson and Coach Herring had their contracts renewed. Defendant School Board voted not to renew the teaching contracts of Coaches Helms and Anthony, and they were so notified pursuant to the Alabama law relating to teacher employment. Under the Alabama tenure law, Alabama Code, Sec. 16–24–2 (1975), a teacher is on probationary status until he has been re-employed for a fourth year. As a general proposition, the school board may elect not to re-employ such a probationary teacher for any reason or for no reason. With certain limited exceptions, the teacher has no basis for seeking legal relief relative to the action of the board in failing to re-employ such teacher. One exception to this broad, general statement obtains, however, if the reason for non-renewal of the teacher's employment is based on race. Anthony contends that his race was the basis for the non-renewal of his contract.[1]

One white and one black, both from outside the Ozark city school system, were hired to replace Helms and Anthony. Both had substantially more coaching experience than Anthony. The new black assistant coach, Coach Johnson, served as a football coach for seven years at another Alabama high school, the last two of which were served as head football coach. The new white assistant coach, Coach Murphy, had also served as head football coach at another Alabama high school prior to coming to Carroll High.

Carroll High School had had very unsatisfactory won and lost records in football, winning only seven games in the three years prior to the 1979–80 school year. Attendance and revenue from the games had fallen off significantly, and such loss was critical to the overall athletic program at Carroll High School. Mr. Britt Mathews, a black member of the Ozark School Board, testified that the Board had actually considered dropping the football program altogether because of lack of fan support due to the poor record over the three years preceding the 1979–80 school year. The head football coach at Carroll resigned at the end of the 1978–79 school year. Following this resignation, defendant School Board employed a new head football coach, Paul Terry, who had an impressive record as the head of other high school football programs in Alabama. Terry had been in coaching for twenty-four years prior to being employed at Carroll High School.

Defendants contend that assistant coaches Helms and Anthony were not re-employed for the fourth year in order to provide the new head coach with the flexibility defendants felt any new head coach would need in shaping his staff and general athletic program. The Board did not wish to place the new head coach in the position of being "locked in" insofar as his assistant coaches were concerned with the same assistants who had participated in the prior unsuccessful seasons. In trying to achieve this end, the Board recognized that neither of the replacements for Helms and Anthony (Johnson and Murphy) would have "continuing service status", since they would be in the first year of their employment in the 1979–80 school year. Moreover, the Superintendent of the Ozark schools, Mr. John Mosley, had taught a graduate course at Troy State University in which Mr. Johnson had been a student. Mr. Mosley was impressed with Mr. Johnson, who had a master's degree in school administration. Mr. Johnson came to the school with duties as an assistant football coach, and as an administrator. At the time of the hearing, Mr. Johnson was assistant principal at Carroll High School. Mr. Mosley testified that this was his plan at the time Mr. Johnson was initially employed. Mr. Mosley pointed out that the order of this Court required him to take action looking toward the hir-

---

1. If a teacher in the public schools of Alabama is re-employed for the fourth year, such teacher obtains continuing service status, and thereafter is entitled to have his contract renewed each year unless the board can show good and just cause for the non-renewal, such causes being enumerated in Alabama Code, Sec. 16–24–8 (1975). Thus, the two assistant coaches Robertson and Herring who were re-employed for the fourth year achieved continuing service status.

ing of blacks in responsible administrative positions. He testified that bringing Mr. Johnson into the school administration was calculated to assist in carrying out this order.

## CONCLUSIONS OF LAW

Plaintiff-intervenor Anthony brings this suit primarily under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and 42 U.S.C. § 1983. The Court has jurisdiction pursuant to 42 U.S.C. § 2000e–5(f); 28 U.S.C. § 1343; 28 U.S.C. § 1331; and 28 U.S.C. § 2201.

The threshold question in a suit of this nature is whether plaintiff-intervenor has established a prima facie case under the standards of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *McDonnell Douglas*, the United States Supreme Court attempted "to clarify the standards governing the disposition of an action challenging employment discrimination" by setting forth the following guidelines:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. 411 U.S. at 802, 93 S.Ct. at 1824.

The Court has some doubts as to whether Mr. Anthony has proved a prima facie case. Mr. Anthony is a member of a minority race; he sought a position as assistant coach and physical education instructor for a fourth year at Carroll High School; he was qualified for the job in the sense that he served in the same capacity as a probationary employee for the preceding three years; and defendants voted not to renew plaintiff-intervenor's contract for a fourth year. However, following this decision not to renew plaintiff-intervenor's contract, defendants sought and employed applicants with more impressive qualifications than Mr. Anthony. The question of what effect defendants' subsequent hiring of more qualified individuals has on plaintiff's ability to establish a prima facie case is not clear. It is not, however, a question that the Court must reach in deciding this lawsuit. Even assuming for the sake of argument that plaintiff has established a prima facie case, the Court finds that defendants have satisfied their burden of rebutting plaintiff's claim.

■ With the establishment of a prima facie case, the burden of proof shifts to the employer. The Court of Appeals for the Fifth Circuit recently set forth the standard that must be met by an employer in the position of defendants in this suit:

> In a case involving a school district with a history of discrimination, the defendant must rebut the plaintiff's prima facie case by clear and convincing evidence that the challenged employment decisions were motivated by legitimate nondiscriminatory reasons. *Castaneda v. Pickard*, 648 F.2d 989 at 994 (5th Cir., 1981).

After carefully considering the evidence offered at trial, the Court is of the opinion that defendants have met this burden of proof.

■ Defendants' explanation for their decision not to renew the contract of Mr. Anthony is relatively simple. During the final half of the 1978–79 school year, defendants undertook a search for a new head football coach in the hope that he could turn around a most unsuccessful three year record at Carroll High School. In preparation for the arrival of a new head coach and as a possible additional incentive to attract the best man for the job, defendants decided to renew only two of the four members of the then assistant coaching staff. Defendants made this decision in an effort to give the new head coach flexibility in developing his own coaching staff and football program. Each of the two coaches whose contracts were renewed had prior coaching experience. Coach Herring had been a

head football coach at another high school in Alabama. Coach Robertson had been a line coach in Decatur, Alabama. Coach Anthony was the only one of the four assistant coaches who had no high school coaching experience prior to coming to Carroll High School.

Plaintiff-intervenor argues that the decision not to renew his contract for a fourth year could not have been based on the Board's interest in hiring Coach Terry as the new head football coach since the Board did not even contact Coach Terry until a few hours after voting against the renewal of plaintiff's contract. The Court does not agree with plaintiff-intervenor's argument.

By deciding not to renew two of the four assistant coaches, defendants gave the new head coach, whoever he might eventually be, at least the expectation that on his recommendation two assistants of his own choosing would be hired. In addition, any new personnel hired by the Board would in all likelihood come in as nontenured employees from outside the system. Thus, at the very least, defendants' decision not to renew Helms and plaintiff Anthony assured the new head coach of a staff of assistants consisting of two tenured and two nontenured coaches as opposed to the staff of four tenured coaches, all of whom had participated in a disastrous three year football program, which would have automatically followed a renewal of Helms' and Anthony's contracts.

The Court finds defendants' decision to renew the contracts of only two of the four assistant coaches consistent with their attempts to attract and hire a new head football coach of the first caliber and in turn to improve the football program at Carroll High School. Furthermore, nothing in the testimony or other evidence offered by plaintiff indicates that race played a part in defendants' decision to place plaintiff-inter-

venor among the two coaches not to be renewed for the 1979-80 school year. Superintendent Mosley testified that the School Board sought nothing more than to renew the contracts of the two most qualified members of the four-man staff. To achieve this end, defendants sought the two men with the greatest amount of experience in high school coaching. Mr. Mathews concurred emphatically in Superintendent Mosley's statement that race was not a consideration in the decision not to renew Mr. Anthony's contract. The Court finds no evidence that race played any part in defendants' decision not to renew plaintiff-intervenor's contract.[2]

Other facts support the conclusion reached by the Court today. Two members of the coaching staff were nonrenewed in the spring of 1979, one black (Anthony) and one white (Helms). Defendants replaced these two individuals with a second black (Johnson) and a second white (Murphy). Although Johnson is no longer on the coaching staff at Carroll, having moved to an assistant principal's position within the same system, he was succeeded by a black on the coaching staff at Carroll.

In the instant suit, plaintiff offered no evidence showing a pattern or practice of discrimination as to other black teachers. Defendants, on the other hand, presented evidence which showed that a slightly higher percentage of blacks than whites achieved tenure during the period 1971–81. Although evidence of other black teachers achieving continuing service status in numbers equal to or slightly in excess of the number of white teachers achieving such status would not aid the defendants if discriminatory non-renewal was clearly shown as to Mr. Anthony, the Court in this case views such statistics as significant where a valid non-discriminatory reason is offered for Mr. Anthony's non-renewal.

---

**2.** A final step exists in the analysis mandated by the United States Supreme Court and the Fifth Circuit Court of Appeals: "If the defendant effectively rebuts plaintiff's charge, plaintiff must be afforded a fair opportunity to show that defendant's asserted justification is merely a ruse for a racially discriminatory decision."

*Baldwin v. Birmingham Board of Education,* 648 F.2d 950 (5th Cir. 1981), amended June 11, 1981). Plaintiff in this suit has been given such an opportunity. The Court remains convinced that race played no part in defendants' decision not to renew Mr. Anthony's contract.

For all of the above reasons, the Court is of the opinion that plaintiff-intervenors' request for further relief should be denied. A judgment will be entered in accordance with this opinion.