**CANTON BRANCH, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., Plaintiffs,**

v.

**Sidney RUNNELS, Mayor, et al., Defendants.**

**Civ. A. No. J85–0201(B).**

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 30, 1985.

Edward Blackmon, Jr., Canton, Miss., for plaintiffs.

C.R. Montgomery, Rebecca B. Cowan, Canton, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This matter is before the Court upon the Motion of Defendants, Mayor and Board of Aldermen of the City of Canton, Mississippi ("City"), for Summary Judgment.

### FACTS

Plaintiffs, the Canton Branch of the NAACP and other similarly situated black residents of Canton,[1] sued the Defendants

---

**1.** The record indicates that Plaintiffs have not moved, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to certify the class allegedly consisting of "all other black resident citizens of Canton, Mississippi, who are similarly situated and affected by the policy, practice, custom and usage complained of herein." Consequently,

for injunctive relief, claiming violations of 42 U.S.C. §§ 1981, 1982[2], 1983 and the Fifth, Ninth[3], Thirteenth and Fourteenth Amendments as a result of the Defendants' alleged practice of providing free water and sewer services to Levi Strauss and Company, North American Plastics, Inc., Mississippi State Tax Commission (ABC Warehouse) and DeBeukeleur, Inc., companies located in the Central Mississippi Industrial Center in Madison County, Mississippi ("Industrial Center"), in violation of *Miss.Code Ann.* § 21–27–27 (1972). Plaintiffs allege that Defendants' conduct discriminates against them. Specifically, Plaintiffs allege that Defendants' use of public funds to subsidize the free delivery of water and sewer service to the Industrial Center and other private individuals residing in the Industrial Center has had a disproportionate economic impact on Plaintiffs. Plaintiffs claim that they have had to defray the cost of the free service provided to the Industrial Center by paying higher utility rates which they are, on occasion, unable to do. As a result, Plaintiffs allege that some of their members have had their utility services terminated and that the Canton Branch of the NAACP has had to raise funds to have the terminated services reconnected.

Defendants claim entitlement to summary judgment on the basis that Plaintiffs cannot prove discriminatory purpose as required for violations of §§ 1981, 1983 and the Thirteenth and Fourteenth Amendments. In support of their Motion, Defendants submitted the Affidavit of John M. Wallace, Manager of Canton Municipal Utilities from 1977 to the present.

In his Affidavit, Mr. Wallace explains that the City is not providing free water and sewer services to the Industrial Center.

According to Mr. Wallace, the City has delayed billing the Industrial Center for these services as a result of a dispute between the City and Bear Creek Water Association, a rural water utility association, regarding which entity has the right to provide water and sewer service to the Industrial Center. The City delayed billing the Industrial Center for water and sewer services to avoid liability to Bear Creek Water Association for violation of the Bear Creek Certificate of Public Convenience and Necessity.

Mr. Wallace also states that the City has not raised its utility rates to defray the cost of the delayed billings to the Industrial Center. Mr. Wallace states that in June 1982, the City unilaterally increased its rates approximately 20%. However, Mr. Wallace states that this 20% increase was not "related to or caused by any water and sewer services provided to" the Industrial Center. According to Mr. Wallace, any other increases in rates resulted from a rate increase imposed on the City by the City's utility supplier.

Mr. Wallace further states that the City has incurred $15,768.69 in operating expenses as a result of providing services to the Industrial Center since April 1981. Mr. Wallace also states that gross income of Canton Municipal Utilities since April 1981 is over $30,000,000.00. Moreover, the statement of estimated operating expenses of Canton Municipal Utilities for services provided to the Industrial Center indicates that Levi Strauss and Company paid Canton Municipal Utilities $5,000.00 on October 10, 1983, leaving a balance of $10,768.69 in total operating expenses incurred by Canton Municipal Utilities in providing services to the Industrial Center. Accordingly, assuming a gross income to the Canton Mu-

---

the Court does not address the issue of the propriety of class certification.

**2.** The Court does not consider Plaintiffs' Complaint to allege a violation of 42 U.S.C. § 1982 which protects a person's right to "inherit, purchase, lease, sell, hold, and convey real and personal property." Accordingly, Plaintiffs' § 1982 claim will not be considered.

**3.** As Defendants note, the Ninth Amendment does not specify any substantive constitutional rights and is considered to be a savings clause to the United States Constitution. Consequently, since the Ninth Amendment does not secure any constitutional rights, no cause of action exists solely for a violation of the Ninth Amendment. *Charles v. Brown,* 495 F.Supp. 862, 863 (N.D.Ala. 1980).

nicipal Utilities of $30,000,000.00 since April 1981, the net expense of providing utilities to the Industrial Center was insignificant.

Finally, Mr. Wallace states that, based upon his personal knowledge, the City did not purposefully discriminate against any class of persons in deciding to delay billing the Industrial Center for water and sewer services. Mr. Wallace also states that the City did not charge any class of persons for the cost of providing services to the Industrial Center or require any of its residents to pay more or less for their utility services than any other resident or provide funds to help pay overdue bills of any of its residents.

In essence, Mr. Wallace's Affidavit indicates that the City's decision to delay billing the Industrial Center for water services was basically economic rather than discriminatory. If the City had billed for water services provided the Industrial Center as they were incurred, the City may have been exposed to liability to Bear Creek Water Association for violation of the Bear Creek Certificate of Public Convenience and Necessity.

In response to Defendants' Motion for Summary Judgment, Plaintiffs submit that disproportionate impact is sufficient to establish a violation of their constitutional rights. To support their allegations that the City's practice of delayed billings to the Industrial Center has had a disparate impact on black residents of the City, Plaintiffs submitted the Affidavit of Rev. L.S. Johnson, President of the Canton Branch of the NAACP.

According to Rev. Johnson, during the fall and winter of 1983 and 1984, the NAACP raised funds to restore utility service to more than 45 black residents of Canton whose utility services had been terminated for non-payment. Rev. Johnson states that these residents were not allowed to defer payment of their utility bills while "white individuals or white institutions were allowed to do so." Presumably, Rev. Johnson refers here to the delayed billings to the Industrial Center. Rev.

Johnson continues, stating that blacks have been "disproportionately affected" by the City's policy of not charging the Industrial Center for utilities because blacks with less financial resources have had to subsidize the City's failure to collect for utilities provided to the Industrial Center.

Plaintiffs also claim that to prove a violation of § 1981 they need only show that they were unlawfully denied a protected constitutional right and that proof of discriminatory intent is not necessary. According to Plaintiffs, a violation of § 1981 can be proved by evidence of disparate impact or treatment. Finally, Plaintiff's claim that under *Hawkins v. Town of Shaw, Mississippi*, 461 F.2d 1171 (5th Cir. 1972), they have established a violation of the Equal Protection Clause of the Fourteenth Amendment by virtue of the City's "arbitrary quality of thoughtlessness." *Id.* at 1172.

### LAW

■ As a result of the decisions of the United States Supreme Court in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) and *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), it is crystal clear that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact." 429 U.S. at 264–65, 97 S.Ct. at 562–63. As stated in *Washington v. Davis*, 426 U.S. at 242, 96 S.Ct. at 2049,

> [d]isproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination.

Indeed, it is well settled that proof of racially discriminatory intent or purpose is required to show a violation of the equal protection clause. 429 U.S. at 265, 97 S.Ct. at 563.

■ To determine whether a discriminatory purpose was a motivating factor, *Arlington Heights* demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available. 429

U.S. at 266, 97 S.Ct. at 564. Although *Arlington Heights* recognizes that the impact of the official action may provide an important starting point, "impact alone is not determinative," and the court must look to other evidence absent a clear pattern of discrimination having no other explanation than discriminatory intent. *Id.*

■ According to *Arlington Heights*, other indicia of discriminatory intent may be found in the historical background of the decision, particularly if it reveals a "series of official actions taken for invidious purposes." *Id.* at 267, 97 S.Ct. at 564. Additionally, "the specific sequence of events leading up to the challenged decision" may reveal the decision maker's discriminatory purpose. *Id.* Or, a departure from the normal sequence of events may reveal an improper purpose.

Plaintiffs rely upon *Hawkins v. Town of Shaw, supra,* for the proposition that discriminatory intent need not be established for liability under § 1983. Yet, in *Washington v. Davis,* the Supreme Court, specifically citing *Hawkins* and others, stated:

... With all due respect, to the extent that those cases rested on or expressed a view that proof of discriminatory racial purpose is unnecessary in making out an equal protection violation, we are in disagreement.

426 U.S. at 245 and n. 12, 96 S.Ct. at 2050 and n. 12. Consequently, Plaintiffs' reliance on *Hawkins* is misplaced.

■ Based upon *Washington v. Davis* and *Arlington Heights,* proof of discriminatory intent is mandatory to establish violations of the Fifth and Fourteenth Amendments. Likewise, proof of discriminatory intent is mandatory to establish a § 1981 claim based on a violation of the Thirteenth Amendment. *General Building Contractors Association, Inc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). Additionally, according to *Coleman v. Franklin Parrish School Board,* 702 F.2d 74, 76 (5th Cir.1983),

[i]n order to state a claim for relief under §§ 1981 and 1983, the plaintiffs must allege purposeful discrimination. (*citing*

*Baldwin v. Birmingham Board of Education,* 648 F.2d 950, 954 (5th Cir.1981) ).

Accordingly, whether the Plaintiffs' cause of action for discrimination arises under the Fifth, Thirteenth or Fourteenth Amendments and is asserted pursuant to § 1981 or § 1983, discriminatory intent is required.

Now, having allayed all doubts concerning the necessity of proof of discriminatory intent in discrimination suits, this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, must determine whether the Plaintiffs, the respondents to this Motion for Summary Judgment, have set forth specific facts showing that there is a genuine issue for trial concerning whether the City's delayed billings for water and sewer services provided to the Industrial Center was motivated by invidious discrimination.

The Affidavit of Mr. Wallace, submitted by Defendants in support of their Motion, establishes that:

1. The City delayed billing the Industrial Center for water and sewer services because of a dispute between the City and Bear Creek Water Association concerning which entity has the right to service the Industrial Center;

2. Delayed billings to the Industrial Center were not motivated by discriminatory purposes;

3. Any rate increases were not the result of the delayed billings to the Industrial Center; and

4. The City has not provided any funds to any of its residents to help pay overdue utility bills nor has it required any of its residents to pay more or less for utilities than any other resident.

In response, Rev. Johnson made conclusory allegations regarding the disproportionate effect of the delayed billing by the City of the Industrial Center.

The Court finds this case substantially similar to *Givens v. Delta Electric Power Association,* 572 F.Supp. 555 (N.D.Miss. 1983). In *Givens,* black residents complained that street lights in black neighborhoods were disconnected while street lights in white neighborhoods were left burning.

The Court noted that deposition testimony of the black residents established only that some of the street lights in the black neighborhoods had been cut off while an affidavit submitted by the defendants established that some of the street lights in the black neighborhoods, which had been provided by defendants free of charge, had been cut off as an economy measure. Defendants further established that although black residents now pay for some street lights in their neighborhoods, white residents pay for all street lights in their neighborhoods. Accordingly, the Court found that

> ... Plaintiffs have wholly failed to come forward with any probative evidence to support the disparate services allegations in their complaint. Mere recitation of the facts that some ... street lights ... have been disconnected is insufficient to support claims of racially motivated disparate treatment with regard to electrical services where defendants have produced uncontradicted evidence fully explaining [defendants'] ... street light disconnection policies.

572 F.Supp. at 560. Since the plaintiffs had "utterly failed" to demonstrate the existence of a genuine issue of any material fact, the Court granted summary judgment against the plaintiffs.

■ This Court concludes that these Plaintiffs have "utterly failed" to demonstrate the existence of a genuine issue of material fact. As in *Givens*, the Plaintiffs' mere recitation of the facts that some blacks had been disparately affected by the City's delayed billings of the Industrial Center is insufficient to raise a genuine issue of a material fact in light of the Defendants' uncontradicted affidavit fully explaining the basis for the City's delayed billings of the Industrial Center.

■ Indeed, Plaintiffs have failed to rebut the sworn statement of the City that its residents have not had to defray the cost of the delayed billings to the Industrial Center and that any utility rate increases were not the result of delayed billings to the Industrial Center. Since the Plaintiffs, the non-moving parties, have failed to rebut the

Defendants' Motion with "significant probative evidence" of discriminatory intent, *see, e.g., Ferguson v. National Broadcasting Company*, 584 F.2d 111, 114 (5th Cir. 1978); *Givens, supra.* at 559, Defendants' Motion for Summary Judgment is appropriate and is hereby granted.

In accordance with Rule 58 of the Federal Rules of Civil Procedure, a separate final judgment will be entered.