Cleveland McWILLIAMS,
Plaintiff-Appellant,

v.

ESCAMBIA COUNTY SCHOOL BOARD,
Defendant-Appellee.

No. 80–5872.

United States Court of Appeals,
Fifth Circuit.*

Unit B

Oct. 5, 1981.

* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

William D. Wells, New York City, for plaintiff-appellant.

Robert W. Kievit, Pensacola, Fla., for defendant-appellee.

Before TUTTLE, RONEY and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Appellant Cleveland McWilliams, a teacher in the public school system of Escambia County, Florida, filed this employment discrimination action against the Escambia County School Board ("Board") under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and under 42 U.S.C.A. §§ 1981 and 1983 (West 1974). McWilliams contends that the Board unlawfully discriminated against him on the basis of his race (1) in transferring him out of his position as a visiting teacher, (2) in demoting him to the position of classroom teacher, and (3) in failing to promote him to certain administrative positions. As to the transfer and demotion, the district court ruled that McWilliams' complaint was time-barred. As to the promotions, the district court held that race played no part in the Board's rejection of McWilliams for each position. We affirm.

## I. TRANSFER AND DEMOTION.

McWilliams contends that he was discriminatorily transferred out of his visiting teacher position in the summer of 1977 through the Board's improper application of an unwritten visiting teachers' seniority rule. He also contests his concurrent demotion to a classroom teaching position as violative of the Board's policy of placing a transferee into the best available position for which the transferee is qualified, including positions the transferee previously held. As to his demotion, McWilliams argues that instead of placing him either into his previsiting teacher position of administrative dean or into other positions available at the time of his transfer, the Board chose for racially discriminatory reasons to demote

him to the position of classroom teacher. The district court ruled that McWilliams was time-barred under Title VII from challenging either his transfer or his demotion. We uphold this ruling.

Title VII requires persons claiming discrimination to file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the allegedly discriminatory practice occurs. 42 U.S.C.A. § 2000e-5(e) (West 1974). This limitations period begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred. Hamilton v. General Motors Corp., 606 F.2d 576, 579 (5th Cir. 1979), cert. denied, 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980); Chappell v. Emco Machine Works Co., 601 F.2d 1295, 1303 (5th Cir. 1979); Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 931 (5th Cir. 1975); see Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).[1]

Here, McWilliams filed his EEOC complaint on February 2, 1978. Thus, any act challenged under Title VII of which McWilliams had or reasonably should have had knowledge prior to August 6, 1977, is barred. The district court ruled that McWilliams reasonably knew before August 6, 1977, that he was to be transferred out of his visiting teacher position and to be placed into a classroom teaching position. Thus, the district court held that McWilliams' claims of discriminatory transfer and of discriminatory denial of certain positions open at the time of his transfer were barred under Title VII. The record contains ample evidence to support the district court's ruling. At some time prior to August 6, Charles Stokes, the Superintendent of Schools, told McWilliams that he would be

---

1. In Ricks, the Supreme Court held that when the challenged act is an individual employment decision (such as the transfer, demotion and promotions involved in McWilliams' case), the alleged discrimination occurs and the 180-day filing period commences from the time the employer makes the decision and communicates it or makes it apparent to the complainant. 449 U.S. at 256, 261, 101 S.Ct. at 503–04, 506, 66 L.Ed.2d at 439–40, 442. We perceive no difference between the Ricks formulation and our pre-Ricks rule. If the complainant knows or reasonably should know that the challenged act has occurred, the employer necessarily has made its decision and has communicated it or made it apparent to the complainant.

treated in the same manner that Charles Williams, another visiting teacher, was treated. Williams had been transferred out of his visiting teacher position and demoted to classroom teacher. On August 1, 1977, Dennis Fillingim, Coordinator of the visiting teachers, told McWilliams that he was "no longer on the payroll" and that he should see Roger Mott, the Assistant Superintendent for Personnel Services, for reassignment. McWilliams saw Mott also on August 1, 1977. Although Mott's testimony is not completely clear, we cannot reverse as clearly erroneous the district court's finding that McWilliams' demotion to classroom teacher was "apparent" to him from the August 1 McWilliams-Mott conversation. Considering all of the evidence in the record, we must uphold the district court's ruling that McWilliams reasonably knew of his transfer and demotion before August 6, 1977.

Because McWilliams was aware of his transfer and demotion before August 6, 1977, he is time-barred from pursuing any Title VII claim stemming from those acts. This bar extends to all positions that McWilliams claims he was denied in violation of the Board's policy of giving transferees the best position available at the time of the transfer, including positions the transferee previously held. When the Board effectively informed him before August 6, 1977, that he was to be given a classroom teaching position, McWilliams reasonably and immediately should have known that he was not going to be transferred to his old position of administrative dean at A.V. Clubbs Middle School, in possible violation of the Board's transfer policy. At that point, McWilliams reasonably knew all of the facts necessary to file an EEOC complaint as to his demotion and transfer. Even if McWilliams did not discover the denial of other available positions until after August 6, 1977, such as the administrative deanship of Escambia High School, this fact is irrelevant. His claim of discriminatory demotion was complete and apparent to him before August 6, 1977. Information concerning other denials of available positions would merely reinforce his claim of discriminatory demotion.

■ McWilliams urges that regardless of the outcome of the Title VII limitations question, his claims of discriminatory transfer and demotion survive under § 1983, one of his alternative causes of action, because of a four-year Florida statute of limitations allegedly applicable to § 1983 employment discrimination cases. McWilliams has also claimed relief under § 1981, which is subject to a limitations period as well. Because the Florida limitations period applicable to McWilliams' §§ 1981 and 1983 claims is two years, not four years, we hold that his discriminatory transfer and demotion claims are barred under §§ 1981 and 1983, as well as under Title VII.

■ Because § 1981 contains no express statute of limitations, the controlling period is the most closely analogous limitation in the state in which the action is filed. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). The weight of authority reveals that the Florida limitations period applicable to § 1981 employment discrimination cases is Fla.Stat.Ann. § 95.11(4)(c) (West Supp.1981), which prescribes a two-year period for "an action to recover wages or overtime or damages or penalties concerning payment of wages or overtime." *Caldwell v. Martin Marietta Corp.*, 632 F.2d 1184, 1186–87 (5th Cir. 1980); *Cutliff v. Greyhound Lines, Inc.*, 558 F.2d 803, 804–05 (5th Cir. 1977) (applying Fla.Stat.Ann. § 95.11(7)(b) (West 1960), the predecessor to 95.11(4)(c)); *Johnson v. Duval County Teachers Credit Union*, 507 F.Supp. 307, 309 (M.D.Fla.1980); *Colston v. Pingree*, 498 F.Supp. 327, 335 (N.D.Fla.1980); *Wong v. Calvin*, 87 F.R.D. 145, 149 (N.D.Fla.1980); *see Williams v. Western Electric Co.*, 618 F.2d 1110, 1111 (5th Cir. 1980) (holding § 95.11(4)(c) generally applicable to employment discrimination cases). *Contra, Drayton v. City of St. Petersburg*, 477 F.Supp. 846, 861 (M.D.Fla.1979) (applying four-year limitation for "an action founded on a statutory liability" under Fla.Stat.Ann. § 95.-11(3)(f) (West Supp.1981)); *Bennett v.*

*Georgetown Manor, Inc.*, 452 F.Supp. 590, 591 (S.D.Fla.1978) (same).

Even though § 95.11(4)(c) may appear on its face to be limited to actions merely for the recovery of back pay, the two-year period prescribed by that section has been applied to § 1981 employment discrimination cases regardless of whether the plaintiff requested legal or equitable relief. *See Williams v. Western Electric Co.*, 618 F.2d at 1111 (reinstatement, back pay, damages); *Cutliff v. Greyhound Lines, Inc.*, 558 F.2d at 803 (damages and injunctive relief); *Wong v. Calvin*, 87 F.R.D. at 147 (injunctive relief, actual and punitive damages); *Colston v. Pingree*, 498 F.Supp. at 335 ("remedies in addition to back pay").

■ The limitations period applicable to McWilliams' transfer and demotion claims under § 1983 is a slightly more complicated issue. This court has apparently never explicitly decided which Florida limitations period applies to § 1983 employment discrimination cases. At least one district court, however, has concluded that the two-year period of Fla.Stat.Ann. § 95.11(4)(c) (West Supp.1981) applies to § 1983 employment discrimination actions. *Wong v. Calvin*, 87 F.R.D. at 149. In choosing which Florida limitations period to apply, we must determine the "essential nature" of the § 1983 claim and the limitations period that the Florida courts would hold applicable to this type of claim. *Beard v. Stephens*, 372 F.2d 685, 688 (5th Cir. 1967). The essential nature of McWilliams' § 1983 claims is employment discrimination. We are bound by our holdings in *Cutliff v. Greyhound Lines, Inc., supra*, and *Williams v. Western Electric Co., supra*, that an employment discrimination case filed in Florida is considered to be a suit for the recovery of wages, even though the plaintiff requests more than just back pay. We have found no Florida cases considering which limitations period to apply to employment discrimination actions. It would be anomalous, however, to apply different limitations periods to McWilliams' §§ 1981 and 1983 claims when his allegations of discrimination are the same in both cases. We, therefore, hold

that the two-year period of § 95.11(4)(c) applies to § 1983 employment discrimination actions.

■ Although the limitations *period* applicable to § 1981 and § 1983 employment discrimination actions is a state law question, the time from which the period begins to run is a matter of federal law. The limitations period for § 1981 and § 1983 employment discrimination cases commences when the plaintiff knows or reasonably should know that the discriminatory act has occurred, the same point from which the Title VII 180-day limitations period runs. *Drayden v. Needville Independent School District*, 642 F.2d 129, 131–32 (5th Cir. 1981); *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir. 1980), *modified in part on other grounds on rehearing*, 644 F.2d 1023 (5th Cir. 1981); *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980); *Hamilton v. General Motors Corp.*, 606 F.2d 576, 579 (5th Cir. 1979), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980).

Here, McWilliams reasonably knew of his transfer and demotion prior to August 6, 1977. He did not file suit in the district court until February 2, 1980. His § 1981 and § 1983 claims as to his transfer and demotion are therefore barred by the applicable two-year statute of limitations.

## II. FAILURE TO PROMOTE

After the events of the summer of 1977, McWilliams applied for several promotions. As to each one, the district court held that the Board's rejection of McWilliams was not based upon his race. Although we uphold this ruling, considering each position in turn, we must first discuss the procedure applicable to employment discrimination cases brought under Title VII, § 1981 and 1983 in light of a recent Supreme Court case. This discussion is necessary because some of McWilliams' promotion denial claims are not time-barred under any of these three statutes.

■ In order to prove racially discriminatory treatment in violation of Title VII, the plaintiff-employee bears the initial burden

of establishing a prima facie case of racial discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). As McWilliams has attempted here, the plaintiff can meet this burden by showing through a preponderance of the evidence that he is black, that he applied and was qualified for an available job with the defendant-employer, and that he was rejected in favor of a white. *Simon v. Honeywell, Inc.*, 642 F.2d 754, 755 n.4 (5th Cir. 1981). By establishing a prima facie case, the employee raises the presumption that the employer rejected him or preferred the white on racially discriminatory grounds. *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. The burden of production then shifts to the employer to rebut this presumption by submitting sufficient evidence to raise a genuine issue of fact as to whether it discriminated against the employee. *Id.* at 255, & n.8, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. The employer must clearly set forth and articulate in a reasonably specific manner the legitimate nondiscriminatory reasons for rejecting the black or for preferring the white. *Id.* at 255, 258, 101 S.Ct. at 1094, 1096, 67 L.Ed.2d at 216, 218. The employer need not persuade the district court that it was actually motivated by the reasons advanced, because the employer bears only the burden of production, not the burden of persuasion. *Id.* at 255, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. Nor must the employer prove that the hired white was more qualified than the rejected black. *Id.* at 259, 101 S.Ct. at 1096, 67 L.Ed.2d at 218.

■ Once the employer carries his burden of production, the burden then shifts to the plaintiff to demonstrate that the proffered reasons for the rejection are a pretext for racial discrimination. The plaintiff must persuade the district court either that a racially discriminatory reason more likely motivated the employer or that the reasons advanced for the plaintiff's rejection are unworthy of credence. In this manner, the plaintiff not only establishes pretext, but also meets his ultimate burden of persuading the district court that the employer intentionally discriminated against him. *Id.* at 253, 256, 101 S.Ct. at 1093, 1095, 67 L.Ed.2d at 215, 217.

The Supreme Court in *Burdine* contributed two vital points to the procedure described above, and in so doing changed the Title VII law as it then existed in this circuit. First, the Court made clear that the burden that shifts to the employer upon plaintiff's demonstration of a prima facie case is a burden of production, not of persuasion. Second, in carrying his burden, the employer need not demonstrate that the hired or promoted white was more qualified than the rejected black. *Robbins v. White-Wilson Medical Clinic, Inc.*, 642 F.2d 153, 155 (5th Cir. 1981).

Because *Burdine* was exclusively a Title VII case, however, the Supreme Court did not address the question of whether these two modifications of Title VII law apply to § 1981 and § 1983 disparate treatment cases. This court has held that the same trial procedure used in Title VII suits may be used in § 1981 and in § 1983 disparate treatment cases. *Baldwin v. Birmingham Board of Education*, 648 F.2d 950, 954–55 (5th Cir. 1981) (§ 1981 case); *Lee v. Conecuh County Board of Education*, 634 F.2d 959, 962 (5th Cir. 1981) (§ 1983 case). In light of *Burdine*, we hold that in disparate treatment cases brought under either § 1981 or § 1983, and using the Title VII trial procedure, the employer bears only a burden of production, not a burden of persuasion, and need not demonstrate that the hired or promoted white was more qualified than the rejected black.[2] Our post-*Burdine*

---

2. We express no views, however, as to whether *Burdine* in any way affects Title VII, § 1981 or § 1983 employment discrimination cases involving personnel actions resulting from the integration of a dual school system and arising under *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir. 1969) (en banc), *rev'd. in part on other grounds per curiam sub nom. Carter v. West Feliciana Parish School Board*, 396 U.S. 290, 90 S.Ct. 608, 24

cases at least implicitly recognize that *Burdine* affects § 1981 and § 1983 employment discrimination cases to the same degree that it affects Title VII cases. *Lindsey v. Mississippi Research & Development Center*, 652 F.2d 488, 491–92 (5th Cir. 1981) (§ 1983 and Title VII case); *Baldwin v. Birmingham Board of Education*, 648 F.2d 950, 956 (5th Cir. 1981) (§ 1981 case); *Simon v. Honeywell, Inc.*, 642 F.2d 754, 755–56 & n.5 (5th Cir. 1981) (§ 1981 and Title VII case); *Robbins v. White-Wilson Medical Clinic, Inc.*, 642 F.2d 153, 155 (5th Cir. 1981) (§ 1981 and Title VII case). We note that a plaintiff taking advantage of the post-*Burdine* Title VII trial procedure to conduct his § 1981 or § 1983 employment discrimination case is still better off than he would be if he were obliged to establish purposeful discrimination under the ordinary burden of proof applicable in civil suits. For example, such a plaintiff will continue to prevail in a § 1981 or § 1983 suit should the employer fail to articulate in a clear and reasonably specific manner the legitimate nondiscriminatory reasons for rejecting the plaintiff.

Having established the standard of proof in a disparate treatment case under all three statutes, we now address each promotion for which McWilliams was rejected. In each instance, we affirm the district court's conclusion that race played no part.[3]

### A. *Hales—Title I Position.*

 McWilliams contends that he was discriminatorily denied the position of assistant director of the Title I program which was given to James Hales on October 1, 1977. McWilliams established a prima facie case as to this position. Hales was selected for the position in part because he had some "aggressive characteristics" that were felt to make him more suitable for the position. Also, Dr. Charles Boyd, the director of the Title I program, with whom the assistant director would be working closely, preferred Hales and evidently exercised "particular influence" over his selection. Finally, Ulysses Hughes, who had been an interim principal at Hales' school, observed that Hales had possessed the respect of both the staff and students and thus had been extremely helpful in overcoming division and hostility among the school's staff after the temporary suspension of the school's usual principal. Hales also had been aggressive and effective in insuring the safety of his industrial arts students by supervising the use of hazardous equipment and by securing the needed services and supplies. Hughes was also familiar with McWilliams' performance and was thus able to form an opinion of McWilliams' abilities and to compare him with Hales. Hughes did not elaborate on his opinion of McWilliams' performance other than to note that he had such an opinion.

In an attempt to demonstrate pretext, McWilliams points out that Hales' experience was limited to classroom teaching, while McWilliams had been both a visiting teacher and an administrative dean. Be-

---

L.Ed.2d 477 (1970). *See Lee v. Conecuh County Board of Education*, 634 F.2d 959, 961 (5th Cir. 1981). McWilliams has not argued that *Singleton* applies to his claims.

We also express no views as to whether *Burdine* in any way affects Title VII, § 1981 or § 1983 employment discrimination cases against an employer who has an immediate past history of racial discrimination, such as a school district operating under a federal injunction ending a recent regime of de jure segregation. In such cases, we have held that the employer bears a burden of persuasion, not merely a burden of production, requiring the employer to prove his legitimate, nondiscriminatory reasons by clear and convincing evidence. *Lee v. Conecuh County Board of Education*, 634 F.2d at 963; *Lee v. Washington County Board of Education*, 625 F.2d 1235,

1237 (5th Cir. 1980). McWilliams has not alleged that the Escambia County public school system possesses an immediate past history of racial discrimination.

3. In its appellate brief, the Board argues that in closing arguments McWilliams' counsel conceded that the Board had not discriminated against McWilliams except for two of the contested positions. We reject this argument because the district court itself did not consider the statements made by McWilliams' counsel to constitute a concession. The district court not only reached the merits as to all litigated positions not time-barred, but also expressly labeled the statements of McWilliams' counsel as a "particular focus" on two positions, rather than as a concession.

cause of this, McWilliams argues that he possessed administrative experience that Hales did not, rendering McWilliams better qualified than Hales for the Title I position. The duties of a visiting teacher, however, do not appear to be administrative in nature. At oral argument, the Board noted that a visiting teacher is basically a "truant officer;" yet neither this nor any other details of the visiting teacher's duties appear in the record, so there is no basis for evaluation. We must resolve any doubts in this regard against McWilliams because he bore the burden of persuasion.

The duties of an administrative dean also do not seem to be administrative. Despite his title, an administrative dean has no administrative responsibilities; he disciplines the students, patrols the school halls and takes care of student disruptions and fights. Moreover, in connection with the Title I position, Hughes expressly testified that visiting teacher and administrative dean experience is of no advantage as to the "type of position" involved.[4] McWilliams had the burden to show pretext as to this issue and simply did not carry it.

McWilliams also argues that his longer presence within the Escambia County School system made him more qualified than Hales. Hales had served for nine years in a New Jersey school system and then ten years in Escambia County, compared to McWilliams' eighteen years in Escambia. The presence within Escambia of an applicant for a Title I position apparently was not a factor of consideration. It seems that the type of work, here "classroom teacher," was important, not service within Escambia County, even though Hughes testified that he had no personal knowledge of Hales' duties in New Jersey other than that Hales had been a classroom

teacher. McWilliams did not attempt to show that such personal knowledge was needed in any way, or that the length of service was at all relevant to selection for the Title I position, as compared with the type of work performed in previous positions.

The record is unclear as to whether the district court held that the Board had articulated a legitimate nondiscriminatory reason simply by showing that a black member of the selection committee and the director of the Title I program, Dr. Charles Boyd, wanted Hales, a white, for the Title I position, and that the opinion of Dr. Boyd, with whom the assistant director would work closely, was given great weight. The mere presence of blacks in the selection process is insufficient to rebut a prima facie case of purposeful discrimination, even when blacks comprise a majority of those responsible for the allegedly discriminatory result. *Castaneda v. Partida*, 430 U.S. 482, 499–500, 97 S.Ct. 1272, 1282–1283, 51 L.Ed.2d 498 (1977). The record only implies that Dr. Boyd actually desired Hales over McWilliams, and even if he did, the record does not disclose *why* he preferred Hales. We need not reach the question of the sufficiency of Dr. Boyd's influence because the testimony of Hughes, a member of the selection committee, provides ample evidence of a legitimate nondiscriminatory reason. Hughes' unrebutted testimony is that his personal opinion of the relative merits of Hales and McWilliams, discussed above, was a factor in the eventual selection of Hales. This testimony was sufficient to raise a genuine issue of fact as to whether the Board discriminated against McWilliams. In response, McWilliams argues solely that the pretext is "obvious." With this we cannot agree. McWilliams attempted no further inquiry

---

4. In his testimony, Hughes seems to have been referring to the Title I position alone, rather than to administrative positions generally, which would include principalships and the Title I position itself. McWilliams notes that as to the principalship of Century High School, another contested promotion denial, visiting teacher experience was viewed as an asset for that position. Yet it is unclear whether visiting teacher experience is useful as to principal-

ships but not as to Title I positions. McWilliams made no effort to compare the duties of the two types of positions so as to determine how relevant visiting teacher experience is to each. Visiting teacher experience could have been of some value to the principalship but not of any value to the Title I position. Because the duties of neither position are in the record, no comparison or evaluation is possible here.

into the selection process to demonstrate the greater likelihood of a racial motive for his rejection. Thus, he failed to carry his burden as to discriminatory selection for the Title I position.

### B. Grund—Clubbs Administrative Deanship.

 Earlier we mentioned the failure of the Board to appoint McWilliams to his old administrative deanship at A.V. Clubbs Middle School immediately upon his transfer. McWilliams also contends that he was discriminatorily denied this position a second time when the Board gave it to Ray Grund on October 19, 1977. McWilliams established a prima facie case as to this second denial. In attempting to articulate a legitimate nondiscriminatory reason, Dr. Mott testified that Grund was placed in the position in October, 1977, because of a conflict between him and his superior at his old deanship position at another school. Both Grund and his superior were transferred out of the school to relieve this problem. Evidently, Grund worked under a contract that required the Board to pay Grund a fixed salary and to keep him in a deanship position. Further, the Board's counsel advised that Grund should be transferred to a deanship position.

In attempting to show pretext, McWilliams points out that Mr. Hughes' testimony indicates that an administrative dean is normally selected not by the higher levels of school system administration (as in Grund's case), but by the principal of the school itself from among his own staff at the school. McWilliams urges that the departure from usual policy in the Grund appointment demonstrates pretext. McWilliams fails to observe that his own appointment to the deanship would have been a departure from the normal selection process because McWilliams himself was not then present in Clubbs in any capacity, and thus was not a member of the staff of the school from which the principal normally selects his administrative deans. Further, McWilliams failed to attack in any way the reasons advanced for the selection of Grund.

The Board needed only to raise a genuine issue of fact as to whether discrimination was involved in the deanship selection. McWilliams then had the burden to show pretext. He did not, for example, introduce the Grund contract into evidence in order to determine whether it in fact required Grund's transfer to a deanship and also payment of a fixed salary.

McWilliams argues further that the record contains no reference to any other employment contract requiring the retention of an employee at a particular position or level. He fails to recognize that once this contractual obligation, and thus the genuine factual issue of discrimination, was raised by the Board, the burden was on McWilliams to show pretext by introducing evidence of the possible absence of similar requirements in other contracts and by asking why Grund had such a contract while others may have not. McWilliams did not do this. Nor did McWilliams develop the facts surrounding the asserted conflict between Grund and his superior at Grund's former school, the alleged impetus for Grund's transfer, in order to determine the nature of the conflict, its severity, and whether similar conflicts were handled by transfers (as in Grund's case) rather than by counseling or discipline. Given that the district court found Dr. Mott's testimony "entirely truthful and credible," we cannot say that McWilliams demonstrated pretext.

### C. Haushalter—Pickens Center Principalship.

 McWilliams also contends that he was discriminatorily denied the position of principal at Pickens Center Elementary School, given to Fred Haushalter on February 13, 1978. McWilliams established a prima facie case as to the denial of this promotion. In an attempt to carry its burden, the Board argued that Haushalter was selected because he had prior administrative experience of five years as a principal and two years as assistant principal, and that he had done a very good job as principal, having good relations with the staff and students. Haushalter had acquired additional admin-

istrative experience of ten years service in the county teacher's union, some of that time being spent as executive secretary of the union, dealing with teachers, the public and the state legislature. In contrast, McWilliams had no administrative experience at all. In arguing pretext, McWilliams showed that while he possessed the certificates in administration and in supervision as required by state law, Haushalter was certified only in administration and thus was legally unqualified to be selected as principal. The certificate in supervision was evidently first required after Haushalter began his prior service as principal and thus did not apply to him at that time. Yet, this certification was definitely required as to the principalship of Pickens Center.

The district court found that at least one member of the selection committee, Dr. Mott, was unaware of Haushalter's deficiency in certification until trial and would not have voted for him had he been so aware. Dr. Mott testified that the credentials of an applicant for a principalship are generally checked before the selection committee meets to consider candidates and that any deficiencies in the minimum required certification, education or experience are brought to the committee's attention. He further testified that the committee apparently was not informed of Haushalter's deficiency, but he could not say for certain whether the other committee members were ignorant of Haushalter's lack of certification. Yet, if Dr. Mott was unaware until trial of Haushalter's incomplete certification, as the district court found, a likely implication from this fact is that the committee probably was also ignorant of this problem. All that the Board needed to do to rebut McWilliams' prima facie case was to raise a genuine issue of fact as to whether it discriminated against McWilliams.

When the testimony concerning the committee's consideration of Haushalter's certification is combined with the testimony as to Haushalter's extensive administrative experience, the Board's evidence exceeds this threshold.

McWilliams points to some inconsistencies and careful word choices in Mott's testimony, attempting to show that the district court's findings as to Mott's knowledge on the certification issue are clearly erroneous. Having reviewed these, however, we cannot say that we are left with the definite and firm conviction that the district court was wrong. *Kingsville Independent School District v. Cooper*, 611 F.2d 1109, 1113 (5th Cir. 1980). Thus, the burden was on McWilliams to extend his inquiry into the process of Haushalter's selection, such as by calling other selection committee members for testimony, in order to discover exactly what was before the committee on the issue of Haushalter's certification.[5] McWilliams did not do this. We therefore uphold the district court's conclusion that McWilliams failed to demonstrate pretext as to his rejection for the Pickens Center principalship.

### D. Century, Ernest Ward, and Molino Principalships.

As to each of the following three principalship positions, the trial court held that McWilliams had established a prima facie case. In each of the three situations, the Board satisfied its burden as follows:

(1) Century High School principalship, awarded to William Smith. The selection committee felt that Mr. Smith would be better able to manage the school program at Century because Smith had grown up in and lived in the Century High School community for a number of years and was well respected there;

---

5. In his appellate brief, McWilliams also argues that in 1979, Haushalter was given a second principalship appointment, again without the required certification. Although the fact of this second apparently illegal appointment appears in one of McWilliams' exhibits, McWilliams never specifically drew the district court's attention to it, and the district court does not seem ever to have considered it. McWilliams could easily have brought this point to light at trial. He did not do so, thus effectively precluding the Board from explaining the reasons for this second appointment. Because McWilliams did not raise this second appointment before the district court, we cannot consider it.

(2) Ernest Ward School principalship, awarded to Thomas Frazier. Although Frazier had only four years of teaching experience to McWilliams' nineteen, Frazier had a total of six years of administrative experience to McWilliams' none: for two years Frazier had been a principal in another school system and for four years had been a Community School Coordinator, responsible for organizing and administering an evening school program;

(3) Molino Elementary School principalship, awarded to Betty Thorsen. Thorsen was selected because she had served three years as principal of another elementary school, Pleasant Grove Elementary School, just prior to her Molino appointment.

The district court held that as to each position the Board had articulated legitimate nondiscriminatory reasons for the selection of others over McWilliams. The burden then shifted to McWilliams to demonstrate pretext, either by showing that these reasons were unworthy of credence or by introducing new evidence that a discriminatory motive more likely motivated the Board. The district court found the testimony concerning the reasons to be "entirely truthful and credible." McWilliams did not attempt to probe more deeply into these principalship selections other than to obtain the articulated reasons mentioned above. He introduced no additional evidence. Thus, we agree with the district court that McWilliams failed to demonstrate a pretext of any sort.

### E. Other Positions.

McWilliams contends that he was discriminatorily denied three positions which apparently arose after he was transferred to a classroom teaching position. Brief, p. 36, n.11. As to each position, McWilliams complains of the district court's failure to make any findings. We hold that he is barred from asserting these claims on appeal, either because he did not make the claim in the district court or because he failed to adequately preserve his claims.

The first position is a principalship at Warrington Elementary School, given to James Hales, effective July 1, 1980. (Plaintiff's Exhibit No. 12, p. 2) Although the fact of this appointment appears in one of McWilliams' exhibits, the record does not show that McWilliams ever claimed in the district court that he was discriminatorily denied this position. Because he did not raise this claim below, we decline to entertain it on appeal.

The other two positions are visiting teacher openings given to Gene Godwin after McWilliams' transfer and to Fred Haushalter on or after July 23, 1978. The only time that McWilliams raised any claim as to these positions was in his own testimony at the trial. After McWilliams rested for the purpose of establishing a prima facie case, counsel and the court recessed for an off-the-record meeting in chambers. After this meeting, the district court observed that McWilliams seemed to have established a prima facie case only as to five positions. The district court did not mention the two visiting teacher openings. The plaintiff corrected the court by noting that the parties stipulated to the challenge of another position, the Title I opening filled by Hales. It was at this point that McWilliams also should have explicitly raised his claims as to the two visiting teacher positions. The factual and legal complexity of this case placed a burden upon both parties to insure that the district court was at all times fully cognizant of their claims. If McWilliams desired a ruling as to whether he established a prima facie case for the two visiting teacher positions, he should have requested one from the district court. Because he did not do so at the appropriate time, we decline to entertain it on appeal.[6]

---

**6.** McWilliams also contends that the district court failed to rule on his claim of discriminatory denial of an administrative deanship at Escambia High School, given to Joseph Chodkiewicz on August 15, 1977. Although we have disposed of this claim on limitations grounds, we note that the district court's failure to rule on this claim is also due to McWilliams' failure to specifically raise it at the same time he failed to raise the two visiting teacher position claims.

For the reasons discussed above, the district court's judgment in favor of the Board is

AFFIRMED.