**John H. ROBINSON, et al., Plaintiffs,**

**v.**

**CAULKINS INDIANTOWN CITRUS CO., et al., Defendants.**

**No. 83–8655–Civ.**

United States District Court, S.D. Florida.

Aug. 30, 1991.

I. Jeffrey Pheterson, Palm Springs, Fla., Pamela S. Wynn, Lake Worth, Fla., David M. Lipman, Lipman & Weisberg, Miami, Fla., Myoshi Smith, Fla. Rural Legal Services, Searcy, Denney, Scarola, Barnhart & Shipley by John Scarola, West Palm Beach, Fla., for plaintiffs.

Morgan, Lewis & Bockius by Sarah A. Kelly, Philadelphia, Pa., pro hac vice, Morgan, Lewis & Bockius by Terence G. Connor, Miami, Fla., Hughes Hubbard & Reed by Laura H. Allen, Nicholas Swerdloff & Stephanie Young, New York City, for defendants VIA Tropical Fruits VIA North America, for defendants.

**1206**

MEMORANDUM OPINION & ORDER

HOEVELER, District Judge.

THIS CAUSE IS before the court upon Plaintiffs' Objections to the Magistrate's January 25, 1991 Report and Recommendation in which the Magistrate recommended this court establish a two-year statute of limitations for all claims in this action brought under 42 U.S.C. § 1981.

### Discussion

In this cause Plaintiffs have brought charges of employment discrimination on the basis of race under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The suit was initiated by Plaintiff John Robinson in December 1983 as an individual action. A year later, on December 14, 1984, an amended complaint was filed, changing the suit to a class action with Robinson serving as one of the class representatives.[1]

Two and a half years after the class filed its complaint the Supreme Court announced in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), that federal courts should use state statutes of limitations for personal injury actions in determining the limitations period for § 1981 claims. Prior to *Goodman*, federal courts, often with widely varying results within each state, had attempted to select the most analogous state statute of limitations to apply to § 1981 claims. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). Defendants, in moving for summary judgment on the § 1981 statute of limitations issue, argue for the imposition of a two-year limitations period, contending that such a period was the applicable statute of limitations in Florida for § 1981 employment discrimination claims prior to *Goodman* and that *Goodman* should not be given retroactive effect. Plaintiffs argue for the retroactive application of *Goodman* to this action for it would allow them to assert § 1981 claims up to four years prior to the filing of their complaint. *See* Florida Statutes § 95.11(3)(*o*) (1989).

Though the general principle is that new judicially created rules will be applied retroactively as well as prospectively, *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879 n. 16, 69 L.Ed.2d 784 (1981), under certain circumstances, retroactive application of a newly-announced rule may prove overly harsh as to a given case. In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court established a three-part test for courts to apply in determining whether creation of an exception to retroactivity is warranted:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.
>
> Second, ... the merits and demerits of each case [must be weighed] by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.
>
> Finally, ... the inequity imposed by retroactive application [must be evaluated, and if the decision] could produce substantial inequitable results if applied retroactively, ... injustice or hardship [should be avoided] by a holding of nonretroactivity.

*Chevron*, 404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted). With this test in mind, the court turns to the cause at hand.

### I. The Existence of Prior Clear Precedent

Prior to issuance of the *Goodman* decision, sufficiently clear precedent existed in the Eleventh Circuit to indicate that all § 1981 employment discrimination actions brought in Florida were governed by the two-year statute of limitations applied to actions "to recover wages or overtime or damages or penalties concerning payment

---

**1.** By separate order this day entered the court has determined that the § 1981 claims of the class do not relate back to Robinson's original complaint filing date, but are deemed filed as of December 1984.

of wages and overtime." Florida Statutes § 95.11(4)(c). *McGhee v. Ogburn*, 707 F.2d 1312 (11th Cir.1983); *McWilliams v. Escambia County School Board*, 658 F.2d 326 (5th Cir.1981).

Plaintiffs unpersuasively contend that *McGhee* and *McWilliams* only concern straightforward "loss of wages" discrimination claims and do not govern their case, which also raises allegations of racial defamation and emotional distress "at least partially sound[ing] in tort." Plaintiffs' Objections at 4, 14. The breadth of the § 1981 claims for relief in addition to payment of lost wages to which the former Fifth Circuit and the Eleventh Circuit applied Florida Statutes § 95.11(4)(c) illustrates that all, and not just some, § 1981 employment discrimination claims in Florida were subject to the two-year limitations period. *See McWilliams*, 658 F.2d at 330 (two-year period applies to § 1981 claims for back pay, reinstatement, and injunctive relief, actual damages and punitive damages) (citations omitted).

Plaintiffs have cited no authority from any Circuit where, in a § 1981 employment discrimination case, a limitations period was determined on the basis of the emotional harm or defamation suffered by the plaintiffs.[2] Nor is the court aware of any district or appellate case in this Circuit which ever suggested that *McGhee* and *McWilliams* applied to some employment discrimination actions but not to others.

Moreover, the fact that decisions preceding *McGhee* and *McWilliams* established that damages for emotional harm fall within the ambit of compensatory damages under § 1981, *see e.g., Garner v. Giarrusso*, 571 F.2d 1330, 1339 (5th Cir.1978); *McCrary v. Runyon*, 515 F.2d 1082, 1089 (4th Cir.1975), *affirmed on other grounds*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), fully supports a reading that *McGhee*'s and *McWilliams'* applicability to all § 1981 employment discrimination cases involving claims for "actual damages" and "other remedies" encompassed actions involving emotional and other compensatory harm. *See McWilliams*, 658 F.2d at 330. Likewise, the application of a two-year statute of limitations to § 1981 employment discrimination cases involving punitive damage claims, *id.*, equally demonstrates this Circuit's prior unequivocal application of Florida's wage claim limitations statute to actions involving the type of intentional, willful, and wanton discriminatory conduct which Plaintiffs have alleged here.

Even assuming that an exception theoretically existed when Plaintiffs filed suit that would have called for application of tort-like statutes of limitations in Florida for tort-like § 1981 employment claims, the little authority which does exist uniformly suggests that Plaintiffs' case would have been undeserving of such exceptional treatment.

It must be conceded that Plaintiffs' claims of emotional anguish and "racial defamation" are only peripherally related to their case. Plaintiffs have not, for instance, brought any state law intentional tort claims against the Defendants to address these harms specifically. Moreover, Count II, the § 1981 count, expressly alleges only that Defendants "intentionally deprived plaintiffs and their class of their rights to make contracts of employment," Third Amended Complaint at para. XIX, "discriminated against plaintiffs and their class," *id.*, "denied plaintiffs and their class equal employment opportunity," *id.*, and rendered Plaintiffs "unable to enforce their employment contracts as white persons." *Id.* at XX. Plaintiffs' Prayer for Relief under Count II seeks compensatory and punitive damages, but makes no specific mention of damages for mental anguish.

Though Plaintiffs can recover under § 1981 for humiliation and emotional distress as a measure of their claim for compensatory damages, *Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir.1985), it is clear that the overwhelming focus of their claims for compensatory relief is on the economic harm suffered from Defendants' alleged employment discrimination. Of the few § 1981 or employment discrimination

---

2. *See* note 4, *infra.*

cases of which the court is aware where a party argued for establishing a limitations period based on the plaintiff's alleged emotional harm or defamatory harm—cases which were established law by the time Plaintiffs filed suit—such arguments were rejected as implicating harm entirely too peripheral to the plaintiff's claims of economic discrimination. In *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3rd Cir.1977), for instance, the Third Circuit rejected application of a defamation or intentional infliction of emotional distress statute of limitations to the plaintiff's § 1981 claim. The court reasoned that:

> [Plaintiff's] complaint may peripherally encompass the emotional or psychic injury which he may have suffered, but its averments are directed to a specific concrete injury.... [Plaintiff complains] not so much from an emotional or mental trauma as he does from the actual denial of his right to lawfully pursue his business, employment, or personal affairs.

*Id.* at 901–02.[3] *See also McNutt v. Duke Precision Dental & Orthodontic Laboratories*, 698 F.2d 676, 679 (4th Cir.1983) (rejecting alleged defamation as proper basis for determining applicable statute of limitations for plaintiff's § 1981 claims where focus of complaint concerned "discriminatory discharge following discriminatory harassment in employment"); *Webster v. Great American Ins. Co.*, 544 F.Supp. 609, 612 n. 3 (E.D.Pa.1982) (fact that portion of total damages sought by plaintiff was for emotional distress did not affect court's focusing statute of limitations determination on nature of plaintiff's age discrimination in employment claim). *See also Pender v. National R.R. Passenger Corp.*, 625

F.Supp. 252 (D.D.C.1985) (declining to apply emotional distress statute of limitations to § 1981 discharge claim, even though plaintiff had alleged state law emotional distress claim), *rev'd on other grounds*, 809 F.2d 930 (D.C.Cir.1987) (*see Banks v. Chesapeake & Potomac Telephone Co.*, 802 F.2d 1416 (D.C.Cir.1986)).[4]

The court is persuaded, therefore, that Plaintiffs' action did not fall beyond the ambit of the clear precedent established by *McGhee* and *McWilliams* and that even if, *arguendo*, any uncharted territory were left by those decisions for application of different statute of limitations periods in § 1981 employment discrimination actions in Florida, Plaintiffs' case was clearly not one which could have wandered such hinterlands.

Plaintiffs' attempts to demonstrate the lack of certainty prevailing in the Circuit as regards the applicable statute of limitations for § 1981 employment discrimination actions uniformly fail. In *Baker v. Gulf & Western Industries, Inc.*, 850 F.2d 1480 (11th Cir.1988), the Eleventh Circuit held the rule in *McGhee* and *McWilliams* inapplicable to the plaintiff's § 1981 case and, finding no clear prior precedent to be pertinent, applied *Goodman* retroactively. Yet there, the plaintiff doctor was not asserting an employment discrimination claim on behalf of himself but a vicarious claim wherein undercompensation by the employer for his services to black migrant workers assertedly impinged on those workers' § 1981 rights. *Baker*, 850 F.2d at 1481. In declining to apply *McGhee* and *McWilliams* the court explicitly noted that "it would appear that a development of the facts would find Dr. Baker to be more of an

---

**3.** That *Meyers* was subsequently overturned by *Goodman v. Lukens Steel*, 777 F.2d 113 (3rd Cir.1986), *aff'd* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), does not disturb the court's reasoning. *Meyers* was valid precedent for Plaintiffs' purposes at the time Plaintiffs filed suit and remained so until the Supreme Court's affirmance of *Goodman*.

**4.** Indeed, the only exception of which the court is aware, where a statute of limitations determination for a claim of employment discrimination under § 1981 was based on a plaintiff's

allegation of defamation or intentional infliction of emotional distress was made by the district court in *Teague v. Caterpillar Tractor Co.*, 566 F.2d 7 (7th Cir.1977) (reversing district court's "correct when made" determination based on intervening precedent). There is every reason to believe the district court in that instance decided properly, however, for, unlike Plaintiffs' action here, that case did not involve discriminatory discharge or failure to hire or promote, but solely concerned a claim of racial harassment in the workplace. *Id.*

independent contractor, rather than an employee who works for wages." *Id.* at 1482. Unlike Baker, Plaintiffs' wage-like claims fall squarely under *McGhee* and *McWilliams.*

Similarly, the court's confusion as to which statute of limitations to apply in *Newberger v. U.S. Marshals Service,* 751 F.2d 1162 (11th Cir.1985) did nothing to disturb the sanctity of *McGhee* and *McWilliams* as they apply to this case. The *Newberger* court itself found *McGhee*'s and *McWilliams*' use of Florida's wage claim statute of limitations inapplicable to Newberger's claim which concerned a charge of conspiracy under 42 U.S.C. § 1985, rather than an employment discrimination claim under § 1981, and involved a salaried plaintiff rather than an hourly wage-earner. *Newberger,* 751 F.2d at 1166 n. 2.

## II. *Effectuating the Purposes of Goodman*

The purpose behind *Goodman* is to establish a uniform and certain limitations period in the various states for § 1981 claims. Because a clear rule existed on the point prior to *Goodman,* it must be conceded that uniformity and certainty were already in place. Because the purposes of *Goodman* would be served equally well by either rule, retroactivity is not necessarily required to effectuate its purposes.

The Eleventh Circuit reached the same conclusion when faced with a situation analogous to the present case in *Foster v. Bd. of Sch. Com'rs of Mobile Cty., Ala.,* 872 F.2d 1563 (11th Cir.1989). There, the court denied plaintiffs the retroactive effect of *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), which would have increased the limitations period governing their § 1983 claims from one to six years. Because *Wilson* represented a clear break from the well-established one-year statute of limitations rule in Alabama for § 1983 claims, *Foster,* 872 F.2d at 1566, the court found that the "second *Chevron* factor does not weigh in favor of retroactive application of the six-year limitations period." *Id.* at 1566. The court reasoned

"[r]etroactive application of the new rule in this case increases the limitations period, but does not necessarily increase uniformity and certainty in this area." *Id.* at 1566–67. *See also Al–Khazraji v. St. Francis College,* 784 F.2d 505, 513 (3rd Cir.1986) *aff'd* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (finding that where prior clear precedent existed, the uniformity and certainty sought by *Goodman* do not militate clearly in favor of or against retroactive application).

Plaintiffs argue that the decision in *Foster* was somehow undermined by subsequent Eleventh Circuit rulings in *Jones v. Preuit & Mauldin,* 876 F.2d 1480 (11th Cir.1989) *(en banc)* (§ 1983 claim of unconstitutional attachment) and *Larkin v. Pullman–Standard,* 854 F.2d 1549 (11th Cir. 1988) (Alabama § 1981 employment discrimination claims), both of which gave retroactive effect to new extended periods of limitations. Those cases have no impact on *Foster*'s analysis, however, as they both determined—unlike in *Foster* and unlike in this case—that no clear rule existed at the time plaintiffs filed their complaints. Thus, the uniformity and certainty sought by *Wilson* and *Goodman* were found to be specifically advanced by retroactivity in those instances. *Jones,* 876 F.2d at 1483–84; *Larkin,* 854 F.2d at 1569. *See also Williams v. City of Atlanta,* 794 F.2d 624 (11th Cir.1986) (shorter two-year limitations period applied retroactively where plaintiffs could not demonstrate clear precedent had previously applied longer four-year period).

## III. *The Equities of Retroactive Application of Goodman*

 The third *Chevron* factor requires the court to consider whether any "substantial inequity" would result from retroactivity. Though having survived the first two-prongs, Defendants' attempt to apply *Chevron* fails here as the court is unable to discern any resultant substantial inequity from the retroactive application of *Goodman* to this action.

The court is aware of five cases where a court was faced with the exact situation

presented here: where a defendant argued for nonretroactive application of a new rule of law which, if applied, would expand a prior, clearly established limitations period such as to breathe life into previously extinguished claims.[5] In all instances, with the exception of *Foster*, the courts found no substantial inequitable result and followed the general rule of retroactivity. *Rowlett v. Anheuser–Busch, Inc.*, 832 F.2d 194, 199 (1st Cir.1987); *Rivera v. Green*, 775 F.2d 1381, 1383–84 (9th Cir.1985); *Farmer v. Cook*, 782 F.2d 780, 781 (8th Cir.1986); *Flowers v. Dickens*, 741 F.Supp. 112, 115 (S.D.Miss.1990).

Defendants rely entirely on *Foster*. There, the Eleventh Circuit found that the defendants would suffer substantial inequities were the claims of the plaintiff class allowed to expand from a prior, clearly established one year period to a six year period prior to the filing of the complaint. *Foster*, 872 F.2d at 1567. *Foster*, assuming it was correctly decided,[6] was distinctly

different from this case and the other cases on point. The six-year liability phase of the litigation in *Foster* had been entirely concluded five years before *Wilson* upset the circuit's prevailing statute of limitations rule for § 1983 employment discrimination claims in Alabama. Three years of discovery and all or almost all of the over one hundred hearings concerning the class members' damages had been completed prior to *Wilson*'s issuance. *Foster*, 872 F.2d at 1565. Under such circumstances, after a total of fifteen years of proceeding under a belief that a one-year limitations period applied, the court understandably found it substantially unfair to the defendants to expand plaintiffs' claims retroactively by another five years: "t[o] change that limitations period at this stage in the litigation to allow plaintiffs to assert twenty-year-old claims would be tremendously disruptive and expensive." *Id.* at 1567.

Here, the Defendants have made no such showing of inequity to them. *Goodman*

---

5. Defendants, appropriately, have not attempted to argue that such claims are barred outright as a result of the prior statute of limitations having run. The general rule that a claim, once expired, cannot be retroactively reborn, *see, e.g., Bulgo v. Munoz*, 853 F.2d 710, 715 (9th Cir. 1988), applies only to expansions of limitations periods by statutory amendment and does not disturb the retroactive applicability of new judicially-created limitations periods. *Flowers v. Dickens*, 741 F.Supp. 112, 115–16 n. 8 (S.D.Miss. 1990).

6. *Foster*, arguably, was wrongly decided in that the court applied a flawed analysis in determining the first factor under *Chevron*. *Foster* found the six-year statute of limitations for § 1983 claims in Alabama, occasioned by the Supreme Court's holding in *Wilson v. Garcia*, to be a clear break from the circuit precedent existing "[p]rior to 1985," the date of the *Wilson* decision. *Foster*, 872 F.2d at 1566. The Supreme Court, in applying a *Chevron* analysis to the *Goodman* case, made it abundantly clear that the proper question is not whether clear precedent existed prior to the pronouncement of a new rule by the Court but whether such clarity as to the proper limitations period was evident at the time plaintiffs filed their complaint. *Goodman*, 482 U.S. at 662–63, 107 S.Ct. at 2621–22. The fact that a clear rule may have been developed after the filing of a complaint and before a Supreme Court decision altering that rule is wholly irrelevant for purposes of a *Chevron* analysis. *Id.*

There appears to have been no clear statute of limitations governing § 1983 employment dis-

crimination claims in Alabama at the time Foster filed his complaint in intervention in 1974. (*See Davis v. Bd. of School Com'rs of Mobile County*, 517 F.2d 1044 (5th Cir.1975) for the procedural history of *Foster*). *Foster* itself cites a 1980 case, *Dumas v. Mount Vernon*, 612 F.2d 974 (5th Cir.1980), as authority for the proposition that a one-year statute of limitations applied to Alabama § 1983 employment claims. Though a 1973 former Fifth Circuit case, *Boshell v. Alabama Mental Health Board*, 473 F.2d 1369 (5th Cir.1973), applied a one-year statute of limitations to a § 1983 free speech claim, it appears that not until 1977 did the former Fifth Circuit definitively determine that Alabama § 1983 and § 1981 employment discrimination claims were governed by a one-year, rather than a three- or six-year statute of limitations. *Ingram v. Steven Robert Corp.*, 547 F.2d 1260 (5th Cir.1977) (deciding the § 1983 limitations issue apparently as a matter of first impression and without reference to *Boshell*).

Assuming the lack of authoritative precedent at the time of Foster's complaint, a strong presumption of retroactivity would exist under *Chevron* due to such a lack of clear precedent and to the effectuation of *Wilson*'s goals of uniformity and certainty which retroactivity would bring about. In addition, the existence of substantial inequities may have been overstated by the court in *Foster* to the extent that the parties may not actually have relied on a one-year statute of limitation for much of, or even, for most of, the litigation.

was announced only two and a half years after the filing of the Plaintiff class's § 1981 complaint, a relatively early point in what has turned into a protracted litigation. No specific issue was raised or litigated by the Defendants during that period concerning the two-year statute of limitations. Though Defendants make the standard argument that they abstractly "relied" on the two-year limitations period, that is, they assumed in their minds that they were no longer liable for § 1981 claims beyond this period, the cases make clear that such abstract reliance, without more, does not amount to a showing of "substantial inequity" under *Chevron. Farmer v. Cook,* 782 F.2d at 781 (mere reasonable reliance by defendants that a claim had been barred too weak to overcome retroactivity); *Flowers,* 741 F.Supp. at 115, 115 n. 6 (lack of showing of actual inequitable detriment by defendants resulted in retroactivity; mere prejudice as to loss of statute of limitations defense insufficient to avoid retroactive result); *Rivera,* 775 F.2d at 1383–84; *Rowlett,* 832 F.2d at 199.

The only specific contentions the Defendants make are that hardship would be visited upon them due to the fading of memories and the difficulties of document retrieval. Memorandum of Law in Support of Defendants' Motion for Summary Judgment as to Statute of Limitations at 10. As to the Defendants' memories, the court does not find the added task of recalling events which occurred eleven years ago, as opposed to only nine, so onerous as to fall into the category of substantial inequity. As to the problem of records, the Defendants do not contend that their records fail to date back eleven years to 1980, only that the records from years 1980 and 1981 were created prior to the Defendants' institution of automated recording procedures, making retrieval "difficult and unreliable." *Id.* This difficulty, however, will not be visited upon the Defendants, but upon the Plaintiffs, whose task it will be to retrieve any excessively burdensome records and, ultimately, to establish the reliability of their evidence.[7]

Because the Defendants have been unable to define any substantial inequity that would inure to them here, the court finds that the presumption of retroactivity should not be disturbed. A four-year statute of limitations will apply to Plaintiffs' § 1981 employment claims under the rule announced in *Goodman v. Lukens Steel Co.*

### IV. *The Applicability of Jim Beam v. Georgia*

After these matters were fully briefed and pending before the court, the Supreme Court issued its opinion in *James B. Beam Distilling Co. v. Georgia,* — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). Because the case calls into question the continuing vitality of the *Chevron* doctrine, the court feels compelled to address its applicability to this matter.

*Beam* required the Court to decide whether it would apply retroactively its decision in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). In *Bacchus,* the Court had struck down as violative of the Commerce Clause a Hawaii statute which imposed a greater excise tax on imported liquor than that imposed on liquor manufactured locally. The Court, without addressing the issue, applied its holding retroactively to the parties in *Bacchus* itself. *Id.* at 297–98, 104 S.Ct. at 3071. In *Beam,* the plaintiff liquor manufacturer sought a refund for the taxes it had paid under a similar Georgia statute for the three years prior to *Bacchus.* A divided Court permitted the rule in *Bacchus* to apply retroactively to the litigants in *Beam* as well. Despite the lack of a majority opinion, five justices agreed with Justice Souter that "when the Court has

---

**7.** Defendants also argue that due to the priorly established two-year limitations period, Plaintiffs could not have relied on a longer period, and thus, no inequity would be suffered by them in the event of nonretroactivity. Such an argument proves of no consequence as it misstates the test under *Chevron. Chevron* focuses only on the inequities that would result were retroactivity to be applied. It is entirely unconcerned with the equitable results of nonretroactivity. *Chevron,* 404 U.S. at 107, 92 S.Ct. at 355–56; *Rowlett,* 832 F.2d at 199.

applied a rule of law to the litigants in one case it must do so with respect to all others [similarly situated] ..." *Beam,* ― U.S. at ―, 111 S.Ct. at 2448.

At first glance, the broad language of Justice Souter's holding would seem to imply that *Goodman,* because it was applied to the parties in that case by the Court, should be applied to all other § 1981 litigants, regardless of the effect on the particular parties to any given litigation pending at the time of *Goodman*'s pronouncement. Were that the case, this court could simply have applied the "pure retroactivity" holding of *Beam* and avoided the need for a *Chevron* analysis entirely. Yet, it strikes this court that the holding in *Beam* is narrower than would initially appear, so much so that, ultimately, it fails to stretch so far as to encompass this matter.

As an initial point of distinction, the Court applied the rule in *Bacchus* retroactively to the litigants in *Beam* because *Bacchus* "did not reserve the question" of retroactivity, but merely applied its holding retroactively to the parties then before the Court. *Id.* ― U.S. at ―, 111 S.Ct. at 2445. *Goodman* on the other hand, did reserve the question to the extent that the Court's opinion itself applied a *Chevron* analysis to the parties before it, thereby validating the ·continued use of *Chevron* as regards the application of *Goodman.*[8]

Moreover, *Beam* did not concern itself with the type of retroactivity issue presented by this case. *Beam* addressed three categories of application of new judicially created rules: 1) the standard "pure retroactivity" approach, which applies a new rule both to parties before the court and to all others who may bring or who have brought claims; 2) the "pure prospectivity"

approach, which applies a new rule only to conduct occurring after the date of the law-making decision and, thus, not to the parties involved in the cause before the court; and 3) a "modified" or "selective prospectivity" approach, which applies a new rule to the parties in the case in which the rule is announced, but not to other cases arising out of conduct occurring prior to the law-making decision. *Id.* at ― ― ―, 111 S.Ct. at 2442–45 (citing cases). *Beam,* in overruling the use of selective prospectivity in civil cases, *id.* at ―, 111 S.Ct. at 2448, did not concern itself with the question presented by this case—which is whether to engage in "selective retroactivity," that is, the non-application of a new rule to the case at hand, when such rule is to be applied as a matter of course retroactively to all other litigants similarly situated.

Though selective retroactivity is generally a practice of the lower courts used in implementing new Supreme Court rulings, the Supreme Court itself has practiced selective retroactivity in conjunction with the *Chevron* analysis, and there is nothing in *Beam* to suggest such a practice has now been discarded.[9] *Compare Goodman,* 482 U.S. at 662–64, 107 S.Ct. at 2621–22 (following the general rule of retroactivity based on outcome of *Chevron* analysis) *with St. Francis College v. Al–Khazraji,* 481 U.S. at 608–09, 107 S.Ct. at 2025–26 (declining to apply *Goodman* rule retroactively to the particular litigants in that case based on *Chevron* analysis).

The *Beam* Court's failure to concern itself with selective retroactivity is perhaps best explained by Justice Stevens' dissent in *American Trucking Associations, Inc. v. Smith,* ― U.S. ―, 110 S.Ct. 2323, 110

---

**8.** The Court did apply *Goodman* retroactively to the parties in that case. Surely though, the Court in *Beam* cannot intend that the contingent outcome of the *Chevron* analysis as applied to the facts and circumstances of the *Goodman* case should somehow control the question as to all other cases pending prior to the announcement of *Goodman*'s new rule.

**9.** As will be discussed *infra,* Justice Souter's suggestion that the Court's decision "limit[s] the

possible applications of the *Chevron Oil* analysis" by declining to consider the particular equities of the given litigants' claim to prospectivity, applies only to the selective prospectivity context where the Court's ruling in favor of or against retroactivity amounts to a choosing of the substantive law against which all conduct during a given pre-law-making-decision period will be judged. *Beam,* ― U.S. at ― ― ―, 111 S.Ct. at 2446–49.

L.Ed.2d 148 (1990).[10] Justice Stevens was the only other justice to join in Justice Souter's opinion, and it is clear that much of Justice Souter's opinion in *Beam* draws its reasoning from the dissent in *Smith*. In *Smith*, Justice Stevens distinguished for the first time between "retroactivity as a choice of law rule and retroactivity as a remedial principle." *Id.* 110 S.Ct. at 2348 (Stevens, J., dissenting). In positing a difference between the two types of retroactivity, Justice Stevens stated:

> A decision may be denied *"retroactive effect"* in the sense that conduct occurring prior to the date of decision is not judged under current law, or it may be denied "retroactive *effect"* in the sense that independent principles of law limit the relief that a court may provide under current law.

*Id.* (emphasis in the original). According to Justice Stevens, the Courts' "choice of law" decisions denying retroactivity are those which announced to the world that conduct occurring prior to the law-making decision would be judged according to the standard of the old rule. On the other hand, the "remedial" decisions denying retroactive effect have been those which accepted or "chose" the new rule as the proper standard by which to judge pre-pronouncement conduct but which, for independent, case-specific equitable reasons chose not to apply the newly applicable substantive law. *See* R. Fallon & D. Meltzer, *New Law, Non–Retroactivity, and Constitutional Remedies*, 104 Harv.L.Rev. 1731, 1756 (1991); *see generally id.* (building on Stevens' dissent to propose that all constitutional cases involving retroactivity be analyzed under remedial principles).

Retroactivity as a choice of law principle arises in instances such as *Beam* and *Smith* where the past precedent relied on— e.g., a Supreme Court case—and the equities advanced—e.g., a general reliance on the validity of the past precedent—are the exact same arguments which all litigants burdened by the new rule would make. In such an instance, for the Court to deny retroactive effect as to one litigant's conduct is for the Court to deny retroactivity to all other litigants similarly situated. In this sense, the Court's decision in *Smith* or *Beam* can be seen as choosing the applicable law by which to judge a party's conduct prior to the law-making decision.

Retroactivity as a remedial principle, however, arises more often in the lower courts where each litigant's burden is case-specific, turning on the litigant's varying degrees of specific reliance on prior Supreme Court precedent, or even more contingently, on the existence of clear prior precedent in a given circuit. In such an instance, for a court to deny retroactive effect is not a choice of law matter at all. The general applicability of the newly-announced substantive law will not be disturbed by the court's denying retroactivity for equitable, remedial reasons in the specific case presented.

In *Beam*, Justice Souter expressly adopted the choice of law/remedial distinction first proposed in the *Smith* dissent, *Beam*, —— U.S. at ——, 111 S.Ct. at 2442–43, and proceeded to examine the question before the Court in *Beam* as a matter entirely involving retroactivity as a choice of law rule. *Id.* at —— – ——, 111 S.Ct. at 2442–49. However, as Justice Stevens explained in his *Smith* dissent—specifically identifying the Court's decisions in *Goodman* and *St. Francis College*—selective retroactivity is a remedial principle, not a choice of law matter. In the application of selective retroactivity, a court "chooses" or acknowledges the newly announced rule as the "best current understanding of the law at the time of the decision" but in rejecting retroactivity as to the individual case be-

---

**10.** In *Smith*, a plurality, consisting largely of the dissenters in *Beam*, reached the opposite result of *Beam* in denying to the litigants in that case the retroactive effect of an earlier decision striking down Arkansas' highway use tax as violative of the Commerce Clause. (That earlier decision, *American Trucking Assns., Inc. v. Scheiner*, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987) had "reserved the question" of retroactivity. *Beam*, —— U.S. at ——, 111 S.Ct. at 2443–45.) Using a *Chevron* analysis, the plurality found retroactivity would result in substantial inequities to the State of Arkansas which had relied on clear past precedent of the Court in establishing its use tax. *Smith*, 110 S.Ct. at 2331–35.

fore it, "establishes a principle particular to the exercise of equitable discretion." *Smith*, 110 S.Ct. at 2355 (Stevens, J., dissenting).

*Beam*, in prohibiting the use of selective prospectivity in civil cases, does not, therefore, prohibit the use of selective retroactivity for the simple reason that the latter is not a form of selective prospectivity at all, but an equitable exception to the general rule of full retroactivity. Justice Souter confirmed as much in announcing that "nothing we say here precludes consideration of individual equities when deciding remedial issues in particular cases." *Beam*, —— U.S. at ——, 111 S.Ct. at 2448.

It may well prove true that the Court's retroactivity doctrine has become so laden with Ptolemaic epicycles that its collapse will soon be upon us.[11] Until a majority of the Court overrules *Chevron*, however, the principles of that case are still good law with respect to pure prospectivity, *see Beam*, at ——, 111 S.Ct. at 2448, and selective retroactivity, and, as such, must be applied by this court. *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 482–86, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989).

### ORDER

For the foregoing reasons, it is hereby

ORDERED and ADJUDGED that the Defendants' Motion for Summary Judgment as to the Statute of Limitations is DENIED. The rule announced by the Supreme Court in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) will be retroactively applied to Plaintiffs' § 1981 claims, rendering as cognizable in this action those claims accruing on or after December 14, 1980.[12]

DONE and ORDERED.

---

11. *See, e.g., Lampf, Plera, Lipkind, et al., v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) where the Court retroactively applied a new statute of limitations rule announced in the case without consideration of the principles of *Chevron*.

12. Until otherwise indicated, the court's Order today shall have no effect on Plaintiffs' pending Re–Argument of Summary Judgment Motions concerning the continuing violations doctrine.